[S. F. No. 12316. In Bank.—April 20, 1927.]

L. BAAR, Respondent, v. F. M. SMITH et al., Appellants.

[1] QUIETING TITLE — PERSONAL PROPERTY — NATURE OF SUIT — REMEDIES — SECTION 738, CODE OF CIVIL PROCEDURE. — Under section 738 of the Code of Civil Procedure, a suit may now properly be brought in the nature of a suit to quiet title to determine adverse claims to personal property, which suit is essentially in equity, but in giving said remedy the code has reserved the right to a trial by jury on certain law issues.

[2] ID.—RECOVERY OF POSSESSION OF PROPERTY—CONVERSION—DAMAGES—TRIAL OF ISSUES.—Before judgment can be given for the possession of property, or for its value in case delivery thereof cannot be had, or for damages for its conversion, if such has taken place, defendants are entitled to have those issues actually tried and determined and, if they desire, tried by a jury.

[3] ID.—LACK OF ADVERSE INTEREST—JUDGMENT.—In a suit to quiet title to corporate stock, where it is not alleged in the complaint, nor asserted by a defendant, that he claims or asserts any right, title, or interest whatsoever in the property, under section 739 of the Code of Civil Procedure not even so much as a judgment for costs can be legally rendered against such defendant.

---

2. See 15 Cal. Jur. 339.

[4] ID. — POSSESSION OF PROPERTY — UNAUTHORIZED JUDGMENT. — In such a case, where neither the plaintiff alleges nor a defendant claims to be in possession of the stock or any part thereof, and there is no allegation as to the value of the stock at any time or as to its conversion or as to damages suffered if the conversion has taken place, a judgment for possession of the stock, or, in case it cannot be had, for damages for its conversion, is not authorized, and so much of the judgment is null and void and subject to collateral attack.

[5] ID. — ISSUES — SECTION 580, CODE OF CIVIL PROCEDURE — VOID JUDGMENT.—In such a case the word "issue," as used in section 580 of the Code of Civil Procedure, is broader than the complaint, where the answer enlarges the same by introducing new matter; and while it is true that the parties may voluntarily submit and try an issue without any specific pleading and thus be estopped from complaint thereat after judgment, in a suit to quiet title to corporate stock where the bare question of ownership and right of possession of plaintiff thereto against the claim of one defendant were the only issues litigated, so much of the judgment that exceeds these issues is *coram non judice* and void.

[6] ID.—FINDINGS—ISSUES BY CONSENT.—The statement in the findings in such a case that by stipulation of parties the value of the stock in suit was on a certain date at least a certain figure per share cannot be held sufficient to introduce by consent and without pleadings the issue of possession and damages for detention, with the alternative of value of stock and damages.

[7] ID.—CONSTRUCTION OF FINDINGS—CONTROL OF STOCK.—The finding in such a case that the stock was under the control of one of the defendants and afterward transferred to his wife and continued to be under his dominion and control is consistent with and an integral part of the claim of fraud urged by plaintiff and is not in any sense the introduction by consent or by silence of the issue of detinue or trover.

[8] ID.—PRAYER FOR GENERAL RELIEF—CONSENT ISSUES.—Even under a prayer for general relief, the relief cannot exceed the issue presented by the pleadings or voluntarily submitted to the court and tried by it.

[9] ID.—PLEADINGS — CAUSES OF ACTION — CONVERSION — DETINUE.— While under the system of this state there is but one cause of

4.   See 14 Cal. Jur. 906.
8.   See 14 Cal. Jur. 907.
9.   See 1 Cal. Jur. 3, 5.

action and the name by which it is called is not determinative, the principles that apply to conversion are distinct from those that apply to detinue or replevin and the same set of facts that would support the one will not support the other.

[10] ID.—POSSESSION OF STOCK—ORDER FOR DELIVERY—SECTION 943, CODE OF CIVIL PROCEDURE.—Where the findings specifically show that the defendant claiming ownership of the stock in such a case is not in the present possession thereof, and was not at the time judgment was rendered, it would be impossible for her to comply with an order requiring her to deliver such stock to plaintiff, hence section 943 of the Code of Civil Procedure would be inapplicable.

[11] ID.—ALTERNATIVE JUDGMENT—CONSTRUCTION OF CODE—APPEAL —STAY OF EXECUTION.—Where there is an alternative judgment in such a case, section 942 of the Code of Civil Procedure is inapplicable, and where that section and section 943 of said code do not apply, section 949 of said code must apply, and the filing of a notice of appeal stays execution upon the judgment.

[12] ID.—EXECUTION—INVALIDITY OF.—Where the judgment in such a case contains a command to any defendant in whose name the stock may stand to indorse and deliver the certificates, or if none of the defendants can or will indorse the certificates and deliver them to plaintiff, said certificates shall be canceled, with a mandatory direction that the corporation issue new certificates to the plaintiff for the stock in question, and if for any cause, and only if, the certificates are not indorsed, or if the corporation does not comply with the mandatory decree, a certain sum for each share of stock not obtained by plaintiff is assessed against the corporation and the defendant claiming ownership of the stock and her husband who does not claim any ownership, an execution issued pursuant to said judgment is void as conferring upon the sheriff judicial powers to ascertain, rightly or wrongly, whether the previous alternatives have been complied with, and if he adjudges that they have not been complied with, he assumes the power to levy upon the real and personal property of defendants, two of whom do not claim any interest in the stock and none of whom have had their day in court on the matter adjudicated.

[13] ID. — CONSTRUCTION OF JUDGMENT — APPEAL — STAY OF EXECUTION—SUPERSEDEAS.—In such a case the money judgment is clearly ancillary and incidental only to the mandatory directions to which it is subjoined, and an appeal from these mandatory provisions of the decree necessarily stays execution upon the in-

10.   See 2 Cal. Jur. 427, 434.

cidental and subordinate provisions thereof, and *supersedeas* will issue to prevent enforcement of these portions of the judgment pending appeal therefrom.

---

(1) 35 C. J., p. 168, n. 31; 32 Cyc., p. 1306, n. 4, p. 1308, n. 16. (2) 35 C. J., p. 168, n. 31; 32 Cyc., p. 1374, n. 34.   (3) 32 Cyc., p. 1380, n. 83.   (4) 33 C. J., p. 1152, n. 22; 32 Cyc., p. 1380, n. 83. (5) 33 C. J., p. 1154, n. 26; 32 Cyc., p. 1380, n. 83.   (6) 33 C. J., p. 1154, n. 28; 32 Cyc., p. 1380, n. 83.   (7) 34 C. J., p. 531, n. 20, 21; 32 Cyc., p. 1380, n. 83.   (8) 1 C. J., p. 1075, n. 71, p. 1081, n. 68; 33 C. J., p. 1149, n. 4 New.   (9) 1 C. J., p. 1003, n. 15, 20, p. 1005, n. 37.   (10) 3 C. J., p. 1273, n. 60.   (11) 3 C. J., p. 1273, n. 60. (12) 23 C. J., p. 316, n. 30 New.   (13) 3 C. J., p. 1319, n. 47.

APPLICATION for a Writ of Supersedeas to restrain any portions of a judgment pending appeal.   T. I. Fitzpatrick, Judge.   Writ granted.

The facts are stated in the opinion of the court.

Brobeck, Phleger & Harrison, James F. Peck, Louis W. Bennett and Charles W. Byrnes for Appellants.

Cyril Appel and R. P. Henshall for Respondent.

PRESTON, J.—This is an application by the appellants Evelyn Ellis Smith, F. M. Smith, and West End Consolidated Mining Company, a corporation, for a *supersedeas* to restrain the enforcement of the judgment in favor of the respondent, L. Baar, by an execution thereon pending their appeal therefrom.   This relief is sought upon the ground that so much of said judgment as forms the basis for said execution is *coram non judice* and void and also that their duly perfected appeal *ipso facto* stays the enforcement of the judgment in the respect in which it is about to be enforced without the giving by them of any bond to stay proceedings.   There is no dispute as to the material facts.

Since the filing of this application the record, which includes the evidence as a part of the judgment-roll, has been lodged in this court and we have considered the same in disposing of this proceeding.   For a determination of the question presented to us, it is necessary to give some consideration to the issues tendered by and litigated in the cause.

The amended complaint, filed February 24, 1923, after averring the corporate existence of the two defendant companies, and the representative capacity of certain other defendants, proceeds as follows: "The plaintiff is now, and for some time past has been the owner of and entitled to the possession of 819,632 shares of the capital stock of the West End Consolidated Mining Company, a corporation." Then follow the usual allegations of a complaint to quiet title, alleging that all defendants, save and alone the West End Consolidated Mining Company, a corporation, claim some right, title, or interest in and to said corporate stock adverse to the plaintiff and that such claims are without right and said defendants have not any title to or interest whatsoever in said stock or any part thereof. Then follows the allegation that on the eighth day of July, 1913, almost ten years prior to the commencement of this action, said stock stood on the books of said corporation in the name of B. F. Edwards, giving the number of each certificate and the number of shares represented by it. It is then alleged as follows: "That plaintiff has no information or belief upon the subject sufficient to enable him to allege as to whether or not said shares of stock still remain in the name of said B. F. Edwards, or in whose name the same now stand on the books of said defendant, West End Consolidated Mining Company, or in whose name certificates therefor are now issued and outstanding."

Then follows the usual prayer that defendants be required to set forth the nature of their claims and that it be decreed and adjudged that defendants, or either of them, have no right, estate, or interest whatever in or to said shares of stock, or any part thereof, and that the title of plaintiff thereto is good and valid; that defendants be forever enjoined and debarred from asserting any claim whatever in and to said stock adverse to plaintiff, "and for such other and further relief as to this Honorable Court may seem meet and proper; and for costs of suit."

It will be observed that as to defendant West End Consolidated Mining Company, a corporation, no allegation whatsoever appears that it in any way asserts any claim to said corporate stock adverse to plaintiff or otherwise. However, said defendant corporation filed its answer herein denying the ownership or right of the plaintiff to possession

of said stock and further pleaded the statute of limitations, but asserted no claim of any kind whatsoever on its own behalf, or on behalf of any other person or corporation to said stock or any part thereof.

The defendant F. M. Smith answered denying the ownership in plaintiff of said capital stock or any part thereof and pleading the statute of limitations, but at the same time pleading a disclaimer as follows: "Denies that the defendant, F. M. Smith, claims any right, title and interest in and to, or in or to, the stock alleged in plaintiff's amended complaint, or any part thereof."

The defendant Evelyn Ellis Smith likewise answered denying the ownership of plaintiff in and to said stock or any part thereof, denying on information and belief knowledge as to whether or not the shares of stock still remained on the books of the corporation in the name of B. F. Edwards or in whose name the same stood, pleading the statute of limitations and in addition thereto alleging as follows: "Defendant Evelyn Ellis Smith alleges that she is the owner of and entitled to the possession of the shares of the capital stock of the West End Consolidated Mining Company, a corporation, described in the amended complaint."

All other defendants either filed disclaimers or made no defense. With the pleadings in this condition the cause went to trial, without submission to the court expressly, by inference, or otherwise, of any other or different issues, and without any evidence applicable to any other issue or issues, and the cause thereafter proceeded to judgment. The attorney for plaintiff at the beginning of the trial explained the issues to the court and the relation of appellants thereto in the following language:

"Mr. Henshall.—No one has any standing in this court except Mr. Harrison. This is an action to quiet title. All of the defendants, other than Mr. Harrison's clients, do not assert any interest in the property. That being the case, they are entirely without any standing in this court. The only person who has a right to be heard is Mr. Harrison's client, Evelyn Ellis Smith. . . .

"This is an action to quiet title, and the rule in regard to actions to quiet titles is very simple. You can join anybody in the world you want. The law permits that, for

obvious reasons. If one of the defendants—if any person who is joined as a defendant has no interest whatever in the controversy all he has to do is one of two things. He can default or he can disclaim any interest or claim in it, and no judgment of costs is to be taken against him. If he wants to answer, however, he has got to assert an interest or he has not got any standing in court whatever. . . . The answer of F. M. Smith is a legitimate answer, and the only legitimate answer along this line in my humble opinion in this case. The defendant Smith denies that he has got any interest in the stock, so he is out. He is entirely out of the case. It is true that he goes on and denies ownership in the plaintiff, but we can regard that as immaterial. It is true that while he is president of the company, he says in his answer that he does not know whether the stock stood of record in the books at all. But that is immaterial. The defendant Smith says he has got no interest in the stock, and he is out entirely.

"The defendant Edwards not only defaulted, but expressly disclaimed, so he is out. We need not concern ourselves with him. The West End Consolidated Mining Company has no interest in the stock. It was joined, of course, your Honor, so that one of two things might happen. In the first place, it was a proper party as a corporation. In the second place, it might, under certain conditions be—I withdraw that. It has no interest. It does not assert any interest in the stock. It simply says the plaintiff is not the owner, and it passes out along with the others.

"The defendant Evelyn Ellis Smith, filed a proper answer, because she alleged ownership herself, and she denied practically all the other things in the complaint, even denial for want of information of this situation with regards to B. F. Edwards."

The court thereafter made its findings of fact and conclusions of law and made and caused to be entered its decree in favor of plaintiff and against appellants, the substance of which decree was similar, in all respects, to the usual decree quieting title and enjoining defendants from asserting any claim to the property adversely to the plaintiff and enjoining also the transferring, conveying, or disposing of or encumbering of said stock; also enjoining and restraining the voting thereof by any person other than plaintiff; also

containing a similar injunction respecting collection, payment, and receipt of dividends; also decreeing to plaintiff costs of suit against each of the appellants. Then appears in said decree the following anomalous language:

"It is further ordered, adjudged and decreed that the defendants, Evelyn Ellis Smith, F. M. Smith, and any other defendant herein, in whose name said shares of stock are now issued, be and they are hereby required to endorse and deliver said stock to the plaintiff, L. Baar.

"That in the event the said Evelyn Ellis Smith and F. M. Smith fail to endorse and deliver the said stock certificates, above described, or certificates issued in lieu thereof, to the plaintiff herein, or are unable for any reason to do so, that said stock certificates representing said 819,632 shares of the capital stock of the West End Consolidated Mining Company are hereby ordered, adjudged and decreed to be cancelled, and in such an event the defendant, West End Consolidated Mining Company be and it is hereby directed to issue and deliver to the plaintiff, L. Baar, a new certificate for 819,632 shares of the capital stock of the West End Consolidated Mining Company, and if for any reason a delivery of said 819,632 shares of stock can not be had, that the plaintiff, L. Baar, do have and recover of and from the defendants, Evelyn Ellis Smith, F. M. Smith and West End Consolidated Mining Company, the sum of $408,316.00, the stipulated value thereof; and in the event that said defendants fail to deliver any part of said 819,632 shares, then the plaintiff have and recover of and from the defendants Evelyn Ellis Smith, F. M. Smith and the West End Consolidated Mining Company the sum of fifty cents (50c) per share for each and every share of stock, so undelivered."

The decree closes with the following language: "This decree is rendered and is directed to be entered herein as and for a final decree in this action, but this court reserves to itself jurisdiction over plaintiff and over each of the defendants herein for the purpose of making any and all appropriate orders for the purpose of enforcing this decree and for the protection of the rights of the plaintiff awarded to him by this final decree."

The record shows that on November 10, 1926, plaintiff without order of court sued out an execution on said judg-

ment, which said execution recited the above-quoted pro-
visions of said judgment and directed the sheriff to secure
possession of said stock and deliver same to plaintiff and
if this could not be done that said execution be levied upon
the real and personal property of said three defendants
sufficient to satisfy said alternative money judgment of
$408,316, with interest and costs or such lesser sum as might
be due under said decree if a *pro rata* only of said stock
be found and delivered to said plaintiff. On November 12,
1926, the defendants F. M. Smith, Evelyn Ellis Smith,
and West End Consolidated Mining Company lodged in the
court below a notice of appeal from said judgment and the
whole thereof. Thereafter on the twenty-fourth day of
November, 1926, said defendants filed herein this petition
for writ of *supersedeas.*

It should here be pointed out that neither the amended
complaint nor the answer of any defendant alleges that the
plaintiff was ever in possession of said corporate stock at
any time or place. Neither is there any allegation that
either of the defendants was in the possession of said stock
at the time of the filing of the complaint or amended com-
plaint. There is no allegation as to the value of said stock
at any time or at all. In other words, there is no proper
allegation whatever which would sustain a complaint for
possession of the stock, an action known at common law
as detinue or replevin. There is likewise no allegation as
to the conversion of said stock by either of the defendants
nor is there any allegation as to the damage suffered had
such conversion taken place. That is, there are no allega-
tions whatever to sustain the action known at common law
as trover. Indeed, an examination of the complaint ex-
cludes necessarily any intent by plaintiff to claim that he
ever had possession of said property or that said defend-
ants or either of them then had possession of it. The
answers of appellants likewise tender no issue whatsoever
that would sustain relief under our system of pleading in
either or any of the actions known at common law as
detinue, replevin or trover. In other words, in no one of
the pleadings is the issue as to possession, value, damages,
or conversion brought into the case. An examination of
the proceedings on the trial itself indicates that not only
were these issues not tendered, but no evidence to sustain

either or any of them was introduced and, as above noted, they were by necessary implication excluded on the trial of the cause by the statements of counsel for plaintiff.

[1] Under section 738 of the Code of Civil Procedure a suit may now properly be brought in the nature of a suit to quiet title to determine adverse claims to personal property. This is essentially an action in equity, but in giving said remedy the code has, to avoid confusion, specifically preserved by said section the right to a trial by jury on such law issues as those described above and in so doing uses the following language: "and provided, however, that nothing herein contained shall be construed to deprive a party of the right to a jury trial in any case where, by the law, such right is now given."

[2] In short, before judgment can be given for the possession of the property, the subject of this action, or for its value in case delivery thereof cannot be had, or for damages for its conversion, if such has taken place, the defendants are entitled to have those issues actually tried and determined and, if they desire, tried by a jury. [3] As to the defendant mining company, no cause of action whatsoever for any purpose was alleged against it. It neither claimed nor asserted any right, title, or interest whatsoever in said property. Under section 739 of the Code of Civil Procedure not even so much as a judgment for costs could be legally rendered against it. This was conceded by counsel for respondent, who at the beginning of the trial used this language: "It has no interest. It does not assert any interest in the stock. It simply says the plaintiff is not the owner, and it passes out along with the others." As to the defendant F. M. Smith, the same observation is true. He specifically disclaimed all interest in this property and the language of counsel himself was that said defendant "is out entirely."

[4] This leaves only the situation created by the claim of Evelyn Ellis Smith in her answer, that she is the owner of and entitled to the possession of said stock. As pointed out above, the plaintiff neither alleges nor does said defendant in her answer claim to be in possession of said stock or any part thereof, and the findings not only fail to locate possession in her, but expressly state that the present pos-

session of said stock is undisclosed, but that she had posses-
sion of same when suit was filed; that since that time "said
defendants have not preserved said stock intact but have
allowed, without the consent of the plaintiff and with knowl-
edge of his ownership, reissues and transfers of the same to
be made . . . "

It likewise appears from the allegations of the petition
herein, which are undenied, that neither of said appellants
has possession of any of said stock nor any part thereof nor
have either or any of them power to make a present
delivery thereof. Therefore, the insertion of the above-
quoted language in said decree in view of the state of the
pleadings and record herein brings to the foreground the
question for solution in this proceeding.

Petitioners assert that said language and said provisions
of said decree were extraneous matter erroneously inserted
therein in excess of the jurisdiction of the court and in vio-
lation of their constitutional right to a trial of such issues
before the entry of such judgment; that said provisions
undertake to dispose of legal issues that were neither ten-
dered by the pleadings nor passed upon by the court; and
that so much of said judgment is null and void and subject
to collateral attack.

To this contention of petitioners we must give our un-
stinted indorsement for the insertion of these provisions is
an open challenge to our entire system of procedure. If
such provisions of a judgment could be sustained, pleadings
could be dispensed with altogether. A litigant under such
laxity could receive benefits or injuries that he could not
expect or anticipate until the chancellor, without restraint
of any kind, announced the length of his own foot.

Section 580 of the Code of Civil Procedure furnishes the
stabilizer for the situation confronting us. It reads: "The
relief granted to the plaintiff, if there be no answer, cannot
exceed that which he shall have demanded in his complaint;
but in any other case, the court may grant him any relief
consistent with the case made by the complaint and em-
braced within the issue."

In *Johnson* v. *Polhemus,* 99 Cal. 240, 245 [33 Pac. 908,
909], construing this section, the court said: "In the sec-
tion last quoted our code adheres very closely to the rules
in equity; that is to say, in case of default the relief is

confined to the relief demanded in the complaint, as was the rule under a prayer for special relief in equity, while in other cases it is extended to granting relief similar to that granted under a prayer for general relief in the chancery courts.

"There being an answer in the case, the right of appellants to recover upon the agreement depends, not upon the prayer of their complaint, but upon the scope of that pleading and the issues made, or which might have been made under it."

To the same effect see, also, *Mock* v. *Santa Rosa,* 126 Cal. 330 [58 Pac. 826], and *McKesson* v. *Hepp,* 62 Cal. App. 620 [217 Pac. 802].

The court in *Johnson* v. *Polhemus, supra,* at page 244, defines the equity practice in vogue prior to the codes as follows: "Under the equity practice in vogue before the adoption of the codes, the bill usually contained a prayer for that particular relief to which the complainant considered himself entitled. The usual practice was also to include a prayer for general relief. The object of the latter was to meet cases in which the plaintiff had mistaken the relief to which he was entitled, as under it he was regarded as entitled to any relief agreeable to the case made by the bill. (Story on Equity Pleading, sec. 49.) If he asked particular relief only he was restricted to his prayer by the decree. A court of equity would not, however, even under a prayer for general relief, permit a party to go beyond the general scope of the case made by the bill, and would not ordinarily permit a bill framed for one purpose answer for another and distinct purpose, especially if the defendant might be surprised or prejudiced thereby. (Story on Equity Pleadings, secs. 41, 42.)"

[5] The word "issue" as used in this code section is broader than the complaint where the answer enlarges the same by introducing new matter (sec. 590, Code Civ. Proc., and *Rogers* v. *Riverside Land etc. Co.,* 132 Cal. 9 [64 Pac. 95]). It is also true that the parties may voluntarily submit and try an issue without any specific pleadings and thus be estopped from complaining thereat after judgment (*Poledori* v. *Newman,* 116 Cal. 375, 377 [48 Pac. 325]; *Mock* v. *Santa Rosa, supra; Sidler* v. *Bakersfield,* 43 Cal. App. 349 [185 Pac. 194]; *McDougald* v. *Hulet,* 132 Cal. 154,

163 [64 Pac. 278]). But no such exceptions exist in this cause; the bare question of ownership and right of possession of plaintiff against the same claim by defendant Evelyn Ellis Smith were the issues and no other issues were litigated in any manner whatsoever. So much of a judgment that exceeds the issues as thus defined, and determines issues not tried or involved, is *coram non judice* and void.

[6] The statement in the findings that by stipulation of parties the value of the stock in suit was on February 23, 1921, at least fifty cents per share cannot be held sufficient to introduce by consent and without pleadings the issue of possession and damages for detention, with the alternative of value of stock and damages, for the reason, first, that the value on February 23, 1921, is no criterion of the value of the stock on June 22, 1925, and particularly is this true of mining stock. Moreover, this evidence was consistent with and in support of respondent's claim of title and must be held to have been introduced in support of this issue.

In *Crescent Lumber Co.* v. *Larson,* 166 Cal. 168, 171 [135 Pac. 502, 503], we have this language:

"But here the pleadings raised no issue regarding security for the debt, and the finding, being entirely outside of the issues, must be disregarded. (*Burnett* v. *Stearns,* 33 Cal. 469; *Gregory* v. *Nelson,* 41 Cal. 279; *Ortega* v. *Cordero,* 88 Cal. 221 [26 Pac. 80].) The rule just stated is subject to the qualification that a finding may be considered where the issue, though not formally raised by the pleadings, was tried in the court below without objection. (*Illinois T. & S. Bank* v. *Pacific Ry. Co.,* 115 Cal. 285 [47 Pac. 60]; *Sprigg* v. *Barber,* 122 Cal. 573 [55 Pac. 419].) But this exception has no application to the case at bar. It is true that evidence of the execution of a deed by Larson to plaintiff's agent was introduced in evidence by the defendant without objection, and that it was also shown that at the same time the said agent had given Larson a paper agreeing to reconvey the land to him if he should, within ninety days, pay a certain sum, which was, in fact, the balance due on the note. But the defendant's contention was that the deed was made and accepted as payment of the note and the evidence introduced by plaintiff in this connection was offered for the purpose of rebutting the showing of payment. All of the evidence on this point was relevant to the

issue of payment, which was in the case, and its introduction cannot, therefore, be regarded as authorizing the determination of some other issue not presented by the pleadings. (*Riverside Water Co.* v. *Gage,* 108 Cal. 240 [41 Pac. 299].)''

[7] The above-quoted authority is also applicable to the claim that the findings show that the stock was under the control of defendant, F. M. Smith, and after transfer to his wife continued to be under his dominion and control. This finding is consistent with and an integral part of the claim of fraud urged by plaintiff and is not in any sense the introduction by consent or by silence of the issue of detinue or trover.

In the case of *Windsor* v. *McVeigh,* 93 U. S. 274, 282 [23 L. Ed. 914, see, also, Rose's U. S. Notes], the supreme court of the United States uttered the following appropriate language: "Tho the court may possess jurisdiction of a cause, of the subject-matter, and of the parties, it is still limited in its modes of procedure, and in the extent and character of its judgments. It must act judicially in all things, and cannot then transcend the power conferred by the law. If, for instance, the action be upon a money demand, the court, notwithstanding its complete jurisdiction over the subject and parties, has no power to pass judgment of imprisonment in the penitentiary upon the defendant. If the action be for a libel or personal tort, the court cannot order in the case a specific performance of a contract. If the action be for the possession of real property, the court is powerless to admit in the case the probate of a will. Instances of this kind show that the general doctrine stated by counsel is subject to many qualifications. The judgments mentioned, given in the cases supposed, would not be merely erroneous; they would be absolutely void; because the court in rendering them would transcend the limits of its authority in those cases." This language is approved by our own court in *Long* v. *Superior Court,* 102 Cal. 449, 452 [36 Pac. 807].

Again, in *Ex parte Reed,* 100 U. S. 13, 23 [25 L. Ed. 538], the supreme court of the United States used the following language: "We do not overlook the point that there must be jurisdiction to give the judgment rendered, as well as to hear and determine the case. If a magistrate, having authority to fine for assault and battery, should sen-

tence the offender to be imprisoned in the penitentiary, or to suffer the punishment prescribed for homicide, his judgment would be as much a nullity as if the preliminary jurisdiction to hear and determine had not existed."

Freeman on Judgments, fifth edition, pages 737–739, section 355, reads as follows: " . . . In some instances courts have undertaken to decide questions not involved in the suit or action before them and to grant relief therein; and their judgments have been assailed for that reason, and to the extent to which they departed from the matters embraced within the record they have been denied effect. A court is limited in its determination to the matters properly before it. Ordinarily it has no authority to pass upon questions not involved and in respect to which its jurisdiction has not been invoked. For courts cannot *ex mero motu* set themselves in motion, nor have they power to decide questions except such as are presented by the parties in their pleadings. What is decided within the issues is *coram judice;* anything beyond is void, unless the parties voluntarily try an issue outside the pleadings. A judgment outside the issues is not a mere irregularity, but is extrajudicial and invalid. The foundation of the rule that judgments of a court of competent jurisdiction are attended with presumptions of verity is the fact that the parties have been properly brought before the court and given an opportunity to be heard upon the matters determined. But the foundation falls, and the rule of verity ceases, when it appears that the judgment adjudicated matters beyond the issues and upon which the parties were not heard."

Our own court has either specifically or inferentially decided the same issue many times. See *Bachman* v. *Sepulveda,* 39 Cal. 688, 690, *Cummings* v. *Cummings,* 75 Cal. 434, 441 [17 Pac. 442], *Noonan* v. *Nunan,* 76 Cal. 44 [18 Pac. 98], *Carpentier* v. *Brenham,* 50 Cal. 552, *Long* v. *Superior Court, supra, Elmore* v. *Elmore,* 114 Cal. 516 [46 Pac. 458], *Simmons* v. *Simmons,* 166 Cal. 438, 441, 442 [137 Pac. 20], *Jacobsen* v. *Superior Court,* 192 Cal. 319 [29 A. L. R. 1399, 219 Pac. 986], and *Tonningsen* v. *Odd Fellows Cemetery Assn.,* 60 Cal. App. 568 [213 Pac. 710], where the court uses this language: "Altho a court may have jurisdiction of a case, yet, if it appears from the record that it did not have jurisdiction to enter the particular decree and judgment,

it may be collaterally attacked.'' The court, in the latter case, quoted approvingly 15 Ruling Case Law, section 327, as follows: ''A judgment may be collaterally attacked where the court had jurisdiction of the parties and subject matter of the action but did not have jurisdiction of the question which the judgment assumes to determine or power to grant the particular relief which it assumes to afford to the litigants.''

[8] The prayer for general relief will not aid the situation, for in such case the relief cannot exceed the issue presented by the pleadings or voluntarily submitted to the court and tried by it. Mr. Freeman again disposes of this question as follows (Freeman on Judgments, 5th ed., p. 739, sec. 355): ''A prayer for general relief authorizes the court to grant any relief within the issues presented by the allegations of the bill of complaint and a judgment, tho departing from the specific relief asked, if within the facts pleaded, is not void for lack of jurisdiction. But a prayer for general relief does not confer jurisdiction to determine matters beyond the issues presented by the allegations or the case, especially where there is no answer or defense pleading.''

Here not only is the common-law action of detinue or trover not included within the pleadings or within the issues submitted to the court, but these issues themselves are inconsistent and could not both be made the basis of relief in one judgment, for in *Kelly* v. *McKibben*, 54 Cal. 192, 195, we have this language: ''The distinction between this action and one to recover damages for the wrongful conversion of personal property, is just as broad as that between the common-law actions of detinue and trover. A good pleader, under the Code, would never confound the two causes of action. One lies for the recovery of the property itself, with damages for the wrongful detention of it, the other for the recovery of damages for the wrongful conversion of it. In the former case the judgment must be for the possession of the property, if a delivery can be had, or for the value thereof, if a delivery cannot be had, with damages for the detention, in either case.''

Again, in *Richards* v. *Morey*, 133 Cal. 437 [65 Pac. 886], we have this language: ''This is an action to recover possession of personal property which, it is alleged, the defendant

took against the will of the plaintiffs, and now detains from their possession. But the finding shows that the property sought to be recovered was not in the possession of the defendant when the action was commenced, nor within his power to deliver, and therefore, said finding would not have sustained a judgment in favor of the plaintiffs for the delivery of the buildings, or for the value of them in case a delivery could not be had.''

[9] While under our system there is but one cause of action and the name by which it is called is not determinative, nevertheless, the principles that apply to conversion are distinct from those that apply to detinue or replevin and the same set of facts that will support the one will not support the other (*California Packing Corp.* v. *Stone,* 64 Cal. App. 488, 492 [222 Pac. 193]).

[10] There are other reasons which forbid respondent to sue out an execution in this case. The findings specifically show that Evelyn Ellis Smith is not in the present possession of said stock and was not at the time said judgment was rendered; therefore, it would be impossible for her to comply with any order requiring her to deliver such stock to plaintiff; hence, section 943 of the Code of Civil Procedure would be inapplicable. (See *Rohrbacher* v. *Superior Court,* 144 Cal. 631 [78 Pac. 22]; *Zappettini* v. *Buckles,* 167 Cal. 27 [138 Pac. 696]; *Loudon* v. *Loudon,* 63 Cal. App. 204 [218 Pac. 442]; *Halsted* v. *First Savings Bank,* 173 Cal. 605 [160 Pac. 1075].)

[11] There is no serious contention that this judgment is within the provisions of section 942 of the Code of Civil Procedure, for in the case of an alternative judgment it has been specially held by this court that section 942 of said code is inapplicable. (*United States Fidelity Co.* v. *More,* 155 Cal. 415 [101 Pac. 302], and *Churchill* v. *More,* 7 Cal. App. 767 [96 Pac. 108].) Since neither section 942 nor section 943 is applicable to the case, it must of necessity follow that section 949 of the Code of Civil Procedure applies and the filing of a notice of appeal stays execution upon the judgment.

[12] There is a third insuperable difficulty standing between respondent and the right to an execution in this case. This judgment has two or three alternatives that must be complied with before a money judgment could in

any case take effect. (1) There is a command to any defendant in whose name the stock may stand to indorse and deliver the certificates. (2) There is an alternative that in the event no one of the defendants can or will indorse the certificates and deliver them to plaintiff, then it is adjudicated that said certificates be canceled, with a mandatory direction that the corporation issue new certificates to plaintiff for the stock in question. (3) If for any cause, and only if, the certificates are not indorsed, or if the corporation does not comply with the mandatory decree, then a penalty of fifty cents for each share not obtained by plaintiff, or of $408,316, if none are obtained, is assessed against the corporation and the two individual petitioners.

It will be seen that an execution such as the one issued in this case confers upon the sheriff judicial power to ascertain, rightly or wrongly, whether the previous alternatives have been complied with, and if he adjudges that they have not been complied with, he assumes the power to levy upon the real and personal property of defendants, two of whom do not claim any interest in the stock and none of whom have had their day in court on the matter adjudicated. A general execution where there was a previous alternative has been held improper (*Freeman* v. *Donohoe,* 188 Cal. 170, 174 [204 Pac. 593]).

Then, too, the judgment is not one giving the relief usually had in a suit for possession of personal property, but goes much further. It not only orders any defendant having possession of the stock to deliver it to plaintiff, but it directs in case of failure or inability to comply with this order that the corporation cancel the stock certificates upon its books in the name of whomsoever they may be and issue new certificates and deliver them to the plaintiff, and then, after failure to get both these sets of relief, is the money judgment against any of the defendants to be operative— but not otherwise. [13] It will thus be seen that the money judgment is clearly ancillary and incidental only to the mandatory directions to which it is subjoined. The following language in *Foster* v. *Superior Court,* 115 Cal. 279, 284 [47 Pac. 58], seems particularly appropriate:

"The injunction, in the judgment, against the interference with Smith's right to act as a director was but ancillary to the judgment determining that he had such right,

and was merely incidental thereto. Altho preventive in form, it was, in effect, mandatory, as it required Foster and the other directors to recognize Smith as one of their number, and to refuse to recognize Lilienthal. As that portion of the judgment declaring that Smith was elected was suspended by the appeal, the injunctive portion of the judgment, being merely incidental thereto, was also suspended, and the power of the court to enforce any portion of its judgment by inflicting punishment for its violation was stayed. An enforcement of this portion of the judgment would operate to carry the decree into effect, and would change the relative positions of the parties from those existing at the time the decree was entered and might render a reversal of the judgment entirely ineffectual.'' (See, also, *Mark* v. *Superior Court,* 129 Cal. 1 [61 Pac. 436], *Schwartz* v. *Superior Court,* 111 Cal. 106 [43 Pac. 580], and *Stewart* v. *Superior Court,* 100 Cal. 543 [35 Pac. 156, 563].) The appeal from these mandatory provisions of the decree will, therefore, necessarily stay execution upon the incidental and subordinate provisions thereof.

Let the writ issue as prayed for.

Shenk, J., Seawell, J., Curtis, J., Langdon, J., Richards, J., and Waste, C. J., concurred.

Rehearing denied.