JOHNSON, J., Concurring and Dissenting.
The trial court reached the right result (a judgment in favor of Li Guan (Guan) and against Yongmei Hu Hu)), but for the wrong reasons. Contrary to what the trial court found, Guan proved his rescission cause of action. Guan's rescission cause of action had two prongs, one based on fraud and one based on a failure of consideration. The trial court correctly found that Guan had not proved his fraud theory of rescission. The trial court, however, failed to consider the second potential basis for the rescission cause of action when crafting its statement of decision. The evidence unequivocally established the failure of consideration basis for rescission. The court's error was compounded by Guan, who, instead of advising the trial court of its omission, attempted to resuscitate his breach of contract claim which had been dismissed with prejudice from the case months before trial.
Similarly, while the majority correctly determines that the judgment for Guan *183 should be affirmed, its Sherlockian efforts to conclude that a cause of action which the trial court had expressly dismissed had not really been dismissed undermine the sacrosanct principles of procedural due process, notice, and fairness. The majority engages in a revisionist reinterpretation of isolated statements in the trial record in order to shoehorn back into the case Guan's previously dismissed breach of contract cause of action. The majority would have us believe that while the trial court knew how to expressly and explicitly dismiss the breach of contract claim, it inexplicably chose not to be express or explicit when it ostensibly determined to reverse its earlier decision. To bolster its conclusion, the majority engages in a number of grave distortions to both the record and the law, including the following: claiming without any support whatsoever from the record that the trial court knew that it had made an "error" (maj. opn. ante , at p. 179-80) when it dismissed Guan's breach of contract cause of action without leave to amend and therefore "allowed" (maj. opn. ante , at p. 179) Guan to replead his breach of contract claim as a rescission claim; and arguing that Guan's rescission cause of action was not a rescission claim at all but actually a breach of contract claim and that the dismissal with prejudice of Guan's breach of contract was not really a dismissal with prejudice.
While I agree that the judgment in favor of Guan should be affirmed, I would remand the matter to the trial court for a reconsideration of the damages award. Since Guan actually prevailed on his rescission cause of action, the court should restructure the award so that it complies with rescission principles (i.e., restores Guan to the status quo ante).
I. Guan's Dual-Pronged Rescission Cause of Action
The majority asserts that Guan "did allege [at trial] breach of contract and the court was aware of it." (Maj. opn. ante , at p. 177.) The majority is wrong on both accounts. The record plainly shows that Guan tried but failed to allege a breach contract cause of action. The record also shows that Guan alleged a dual theory rescission cause of action based on fraud and failure of consideration. Finally, the record shows that while the trial court was well aware of Guan's fraud theory of rescission, it was not similarly attuned to Guan's failure of consideration theory.
A. GUAN'S DUAL THEORY OF RESCISSION
As noted above, Guan initially pursued, not a rescission cause of action, but a breach of contract claim. Guan, however, could not allege successfully a breach of contract cause of action, and the trial court ultimately dismissed that claim without leave to amend. Only then did Guan elect to pursue a rescission cause of action. Under the Civil Code, a plaintiff seeking rescission may do so under a number of different theories, including fraud or a failure of consideration, ( Civ. Code, § 1689, subd. (b)(1) & (2)[1] ), which is exactly what Guan did here. Guan made clear in his opposition to Hu's demurrer to his third amended complaint (TAC) that his election to seek rescission was based on two distinct theories: fraud and a failure of consideration: "TAC alleged the facts that [Hu] made misrepresentations to induce [Guan] to enter into the Contracts and thus satisfied the requirements of § 1689(b)(1). Additionally, TAC alleged the facts that [Hu] breached the written Contracts by total failure to perform her obligations to sell the Property and this satisfied the requirements of § 1689(b)(2)."
*184 B. THE DUAL NATURE OF GUAN'S THEORY OF RESCISSION GETS LOST IN THE SHUFFLE
Unfortunately for all concerned, Guan's dual theory of rescission appears to have been largely overshadowed by trial events and by Guan's heavy emphasis of his fraud theory of rescission.
1. Guan opted to give primary emphasis at trial to his fraud theory of rescission
On December 21, 2015, the tenor and direction of Guan's case changed in an important way. On that day, the Hu testified at her deposition that she regarded the parties' contract as a "fiction," a "joke," and that, as a result, she "never had any plan to respond" to any directive by Guan to sell the house.
Guan seized on Hu's deposition testimony and adjusted his strategic focus of the case accordingly. On January 21, 2015, less than a month after Hu's deposition, Guan filed his fourth amended complaint (FAC), the operative pleading at trial. The FAC, among other things, added a companion cause of action to Guan's rescission claim, a cause of action for fraud-in-the-inducement. In his new fraud-in-the-inducement claim, Guan quoted Hu's deposition testimony about "never" having an intent to comply with the terms of the parties' agreement.
In pretrial briefing, Guan repeatedly stressed the central importance of Hu's deposition testimony in shaping the issues for trial. For example, in opposition to one of Hu's motions in limine, Guan stated that "the character of the case changed dramatically with the filing of the [FAC] on January 21, 2016, incorporating facts that Guan learned from Hu's deposition a few short weeks ago." Guan explained that "after Hu gave her deposition and effectively admitted that she fraudulently never intended to honor the terms of the contract, the issue of Hu's 'equity' was extinguished because her conduct supports rescission of the Contract."
In order to clarify for the trial court just how much the his theory of the case had changed as a result of Hu's deposition testimony, Guan noted that the issue of Hu's equity in the Malibu house "was once relevant when the case was a breach of contract action because the timing of valid instructions to sell the property would have impacted whether or how much 'equity' [Hu] would be allowed to retain upon the sale of the property." But because Guan's case was now based on a fraud theory of rescission and a fraud-in-the-inducement cause of action, Hu's alleged equity was "no longer directly at issue."
According to Guan, the "main focus of the currently operative complaint is now on the false promises by [Hu] and her unequivocal expression at her deposition that she had no intention of performing relevant duties under the Contract vis a vis [Guan] when she entered into it ." (Italics added.)
Just in case there was any doubt in the trial court's mind about the focus of Guan's litigation strategy at trial, Guan explained that "this case has been narrowed through the pleadings to concern only rescission of the Contract and related theories. This case is now about [Hu's] fraudulent conduct, requiring rescission and a full refund from [Hu] to [Guan] of all of the money he provided for the purchase of the property ... and not about whether or not the Contract required [Hu] to sell the property if [Guan] (and/or if Mr. Chen) gave [Hu] written instructions to sell the property." (Second italics in original.) In other words, Guan's claim against Hu-as clarified and stated by Guan himself-was not based on Hu's breach of a valid contract that both *185 parties intended from the start to fully honor; rather, Guan believed his strongest theory of liability hinged on Hu fraudulently inducing Guan to enter into an invalid contract-invalid because she never had any intention of fulfilling any of her contractual promises.
Consistent with this viewpoint, Guan emphasized in his trial brief Hu's statement that the contract was a "fiction" and detailed for the court the "substantial evidence" that supported his fraud theory of rescission and his fraud-in-the-inducement cause of action.
As the majority correctly notes (maj. opn. ante , at pp. 173 - 75), Guan did not, by any means, abandon his failure of consideration theory of rescission. But he did not push it nearly as hard as he did his fraud theory. Guan's heavy emphasis on his fraud theory, however, had certain consequences, including most notably, the trial court's conclusion that Guan's rescission cause of action was unitary in nature.
2. The trial court mistakenly accepted Guan's fraud theory as the only theory of rescission
The trial court, which oversaw Guan's case from start to finish, came to regard Guan's rescission cause of action as being based on a unilateral theory. By way of example, during closing argument, the trial court stated: "Guan's argument is not benefit of the bargain or out of pocket loss. Guan's argument is that the contract is void ab initio. The fraud caused the contract not to form ." (Italics added.)
The trial court expanded on its understanding in its tentative written decision, "Guan's operative complaint, his [FAC], pleads causes of action for rescission of the contract; cancellation of the contract; money had and received; promissory estoppel; and fraud in the inducement. These causes of action alleged that Hu had no intention when she signed the contracts to comply with a written instruction to sell the house, and, therefore, the contract is subject to rescission or some other remedy to restore the parties to their precontract position ." Neither of the parties, including Guan, objected to this statement as inaccurate; as a result, it was incorporated into the trial court's final statement of decision.[2] In its final statement of decision, the trial court went on to add the following: "[Guan] argued that when [Hu] signed the contract ... she did not intend to sell the house even if she received proper written notice and that her promise to do so was a misrepresentation. This is the premise underlying [Guan's ] claims to rescind, cancel and void (for fraud) the contract ." (Italics added.) In other words, for whatever combination of reasons, the trial court apparently perceived at the time it wrote its statement of decision that Guan was not proceeding on a dual theory of rescission that included a failure of consideration theory, as well as fraud theory.
Through this singularly focused understanding of Guan's rescission cause of action, the trial court viewed and assessed the evidence. For example, during Guan's closing argument, the trial court was plainly concerned with the dearth of evidence supporting Guan's fraud-based claims (rescission and fraud in the inducement): "So, essentially, your argument is that there was fraud in the inducement and that ... she had no intention to perform the contract.... [¶] Isn't that a real gamble? [¶] ... You have no evidence at the time she didn't intend to perform the contract.
*186 That's at the time she signed the contract.... [¶] There's no evidence right then that she didn't intend to perform the contract."
This paucity of evidence explains why the trial court ultimately found against Guan on his rescission and fraud-in-the-inducement causes of action: "[Guan] argued but did not prove that Hu, at the moment when she signed the contract, did not intend to perform her contract obligation to sell the house when and if Chen gave her written instruction that she do so. There is evidence, but not sufficient evidence, ... to support rescission of the contract."
However, it is also manifest from the entire record that the trial court found that there was in fact a failure of consideration (i.e., Hu failed to honor the promises that she made to Guan and QiWei Chen (Chen), her paramour). As the court stated in its statement of decision: "Hu breached the contract in failing to take any steps to sell the house after receiving Chen's email directing her to do that on July 21, 2012.... [¶] Chen's July 21, 2012, email was unequivocal that Hu was to sell the house. Chen did not at any time retract or qualify that written instruction. Hu took no steps whatsoever to initiate the sale of the house." Hu's defenses to this failure of consideration claim, according to the trial court, were either "not believable," "not tenable," or had "no support."
"The meaning of a court order or judgment is a question of law within the ambit of the appellate court." [Citation.] "The true measure of an order ... is not an isolated phrase appearing therein, but its effect when considered as a whole. [Citations.] In construing orders they must always be considered in their entirety, and the same rules of interpretation will apply in ascertaining the meaning of a court's order as in ascertaining the meaning of any other writing. If the language of the order be in any degree uncertain, then reference may be had to the circumstances surrounding, and the court's intention in the making of the same." ( In re Ins. Installment Fee Cases (2012) 211 Cal.App.4th 1395, 1429, 150 Cal.Rptr.3d 618.)
Consequently, it appears from the record that the trial court did indeed find that Guan had established a failure by Hu to provide consideration-which, as stated above, was an alternate legal theory on which Guan's rescission theory stood. Thus, in finding that Guan had established a failure of consideration, the trial court effectively determined that Guan had prevailed on his alternate theory for rescission. Had the trial court focused on the fact (or had it been reminded in a timely and concrete manner) that Guan's theory of rescission was not unitary in nature but based in part on a failure of consideration theory, the court clearly would have awarded rescissionary damages (and possibly also adjusted the equities pursuant to section 1692). But that is not what the trial court did. Instead, the trial court awarded Guan a form of benefit-of-the-bargain damages, something that is not permitted under California's law of rescission.
As our Supreme Court has observed, the damages available for a breach of contract cause of action versus one for a rescission, are quite different: "The award given in an action for [breach of contract] compensates the party not in default for the loss of his 'expectational interest'-the benefit of his bargain which full performance would have brought. [Citation.] Relief given in rescission cases-restitution and in some cases consequential damages-puts the rescinding party in the status quo ante, returning him to his economic position before he entered the contract." ( Runyan v. Pacific Air Industries, Inc . (1970) 2 Cal.3d 304 316, fn. 15, 85 Cal.Rptr. 138, 466 P.2d 682.)
*187 Accordingly, the judgment in favor of Guan should be affirmed, but the matter should be remanded so that the trial court, after briefing and argument from the parties, may reconsider and reconfigure its award of damages so that it complies with California law on rescission.
The majority attempts to dismiss the analysis of the dissent by pointing to the undisputed fact that the trial court, in its statement of decision, determined that the evidence did not establish rescission. (Maj. opn. ante, at p. 180.) Closing one's eyes to the trees does not make the forest go away.
The majority's argument is not only disingenuous in that it is a clear departure from the majority's gestalt-approach to re-engineering the trial court's intentions (which the majority uses to resuscitate a breach of contract claim despite the trial court's express dismissal with prejudice of that cause of action), but also maladroit in its failure to recognize that the analysis of the dissent begins with an acknowledgement that the trial court found no rescission because it focused exclusively on a fraud theory as opposed to a failure of consideration theory. The dissent's approach does not re-conjure a cause of action; instead, it simply points out that the trial court forgot to consider an alternative theory of rescission-a theory that had been pleaded and which, based on the trial court's findings, a theory that if remembered would have justified a finding for Guan on rescission for lack of consideration. That the parties did not argue this theory on appeal is of no consequence. The meaning of a court order or judgment is, as noted above, a question of law subject to our independent review ( In re Ins. Installment Fee Cases, supra , 211 Cal.App.4th at p. 1429, 150 Cal.Rptr.3d 618 ), which means that we give "no deference" to the trial court's ruling or the reasons for its ruling. ( Oakland Raiders v. National Football League (2007) 41 Cal.4th 624, 628, 61 Cal.Rptr.3d 634, 161 P.3d 151.) Accordingly, in my view, the trial court's indefensible resort to breach of contract damages requires a remand for consideration of an appropriate rescission-based remedy.
II. The Majority Misconstrues the Record
In order to justify its holding, the majority has taken a number of unusual steps, which include the construction of an alternative history of this case.
On August 25, 2015, the trial court dismissed without leave to amend the breach of contract cause of action from Guan's second amended complaint (SAC). According to the majority, however, the trial court made a mistake in dismissing the breach of contract cause of action without leave to amend: Guan "had adequately pleaded a cause of action for breach of contract in his second amended complaint, and the trial court erroneously sustained Hu's demurrer to that cause of action." (Maj. opn. ante, at p. 178.) The majority's assertion is not only devoid of any meaningful textual and legal analysis of Guan's pleadings, but it is also plainly contradicted by the record. The record clearly shows that the trial court repeatedly demanded that Guan make certain changes in his breach of contract cause of action, including clarifying whether the parties' contract was oral or written or some combination of the two, and that Guan repeatedly failed to do so: "The changes made in the [SAC] don't cure the defects previously noted by the Court.... [Guan makes] the same arguments the Court previously found to be meaningless.... Further, in re the prior demurrer, the Court stated that 'it appears that the actual agreement was part written and part oral.... Any amendment must clarify the nature of the [contract] sued *188 upon....' The [SAC] still fails in this regard." Given Guan's repeated failure to correct the demonstrable defects identified by the trial court with the breach of contract cause of action, it cannot reasonably be maintained that the trial court abused its discretion when it dismissed that cause of action with prejudice.
Even more bizarrely, the majority asserts that the trial court itself "realize [d]" that its dismissal of the breach of contract cause of action with prejudice was a mistake and sought to correct that mistake when Hu challenged Guan's third amended complaint (TAC) and his new cause of action for rescission. (Maj. opn. ante, at p. 178.) The majority, however, does not (and cannot) point to any oral or written statement by the trial court in the record before us indicating or even suggesting that it regarded its ruling on the SAC as a mistake and was trying to correct that mistake through its ruling on Hu's demurrer to the TAC. In fact, even when the trial court had the opportunity posttrial to revive Guan's breach of contract cause of action, it refused. Moreover, there is little evidence that even Guan thought the trial court's dismissal of its breach of contract cause of action was a mistake at the time or later. On the record before us, there is no indication that Guan ever petitioned for an extraordinary writ challenging the trial court's ruling, or filed a motion for reconsideration. Notably, if Guan had actually believed that the trial court's ruling on his breach of contract cause of action was a prejudicial error, he could have dismissed the remaining causes of action immediately following the court's order on the SAC, and then appealed from the subsequent judgment with regard to the breach of contract claim. (See Code Civ. Proc, § 472c.) But Guan did not take this action. In fact, Guan did not even seek review of the court's dismissal with prejudice ruling in its subsequent cross-appeal.
The majority further asserts that Guan's cause of action for rescission was really a "restated" cause of action for breach of contract which the trial court purportedly "allowed to proceed." (Maj. opn. ante, at p. 179.) The sole support from the record that the majority cites for this remarkable contention is the following statement by the trial court in overruling Hu's demurrer to the TAC: "[Guan] adequately alleges the contractual basis for the [rescission] claim." From the phrase "contractual basis," the majority infers that the rescission cause of action is really a breach of contract cause of action. The majority's reasoning falls short of the mark because every rescission cause of action, (as with every breach of contract cause of action) must have a contractual basis, otherwise, there would be nothing to rescind (or to be breached).
Moreover, the trial record flatly contradicts the majority's claim. Hu challenged the legal sufficiency of Guan's rescission cause of action in the TAC on a variety of grounds, including that it was just a "rehash" of Guan's legally insufficient breach of contract cause of action. The trial court found all of Hu's arguments, including the "rehash" argument, wanting and overruled the demurrer as to the rescission cause of action and all other causes of action in the TAC. Critically, when Hu argued in its summary judgment motion that Guan's rescission cause of action was nothing more than a recycled version of the "breach of contract [cause of action] that had already been dismissed with prejudice," the trial court once again found the argument to be without merit. In short, the trial court repeatedly had the opportunity to find that Guan's rescission cause of action was nothing more than a "restated" breach of contract cause of action and each time it refused to do so. Put a little differently, the trial court consistently found Guan's rescission *189 cause of action to be separate and distinct from the dismissed breach of contract claim.
There is, in sum, little to commend in the majority's counterfactual, alternative history of this case. The record does not show that the trial court ever regarded (a) its dismissal of the breach of contract cause of action as a mistake or (b) Guan's rescission cause of action as nothing more than a restated breach of contract cause of action.
As discussed below, there is even less to commend in the majority's alternative version of the law.
III. The Majority Turns the Law on Its Head
A. THE MAJORITY MISAPPREHENDS RESCISSION
The majority asserts that rescission is not a cause of action separate and distinct from a breach of contract cause of action but merely a remedy and that Guan's cause of action for rescission "regardless of its label" is a breach of contract cause of action. (Maj. opn. ante, at p. 178.) Specifically, the majority urges that "the allegations in Guan's first cause of action for 'rescission' establish a cause of action for breach of contract, regardless of its label or the remedies he sought." (Maj. opn. ante, at p. 178.) The majority is mistaken-a breach of contract cause of action and a rescission cause of action are mutually exclusive.
As the leading treatise on California law makes plain, there are (and there have long been) two distinct causes of action for a plaintiff in a contract-based dispute: seek "damages for breach of contract" or seek "restitution after rescission." ( 4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, §§ 515 - 540, pp. 648-668 and §§ 541 - 552, pp. 668-680.)[3]
Moreover, although both rescission and breach of contract are contract-based causes of action, it has long been recognized that they are distinctly different and that difference is of "practical importance." (Koford, Rescission at Law and Equity (1948) 36 Cal. L. Rev. 608, 609.) "When one party has been injured by a breach of contract and she either lacks the ability or the desire to keep the contract alive, she can choose between two different remedies. [Citation.] She can treat the contract as rescinded and recover damages resulting from the rescission. Or she can treat the contract as repudiated by the other party and recover damages to which she would have been entitled had the other party not breached the contract or prevented her performance. [Citation.] An action for rescission is based on the disaffirmance of the contract and an action for damages for breach of contract is based on its affirmance . [Citations.] An action for rescission and an action for breach of contract are alternative remedies. The *190 election of one bars recovery under the other ." ( Akin v. Certain Underwriters At Lloyd's London (2006) 140 Cal.App.4th 291, 296, 44 Cal.Rptr.3d 284, italics added.)
Here, the majority loses its way by equating a failure of consideration theory of rescission with a breach of contract cause of action . Plainly and simply, a rescission cause of action, whatever its underlying theory, is something very different from a breach of contract cause of action.
B. THE MAJORITY IMPROPERLY DISREGARDS THE DISMISSAL WITH PREJUDICE OF GUAN'S BREACH OF CONTRACT CAUSE OF ACTION
As noted above, Guan initially pursued a theory of recovery based on the affirmance of the parties' contract. Guan, however, could not successfully allege a breach of contract cause of action. After three unsuccessful attempts, the trial court dismissed the claim without leave to amend. The majority treats that dismissal as effectively a nonevent. (Maj. opn. ante, at pp. 177 - 79.) Nothing could be further from the truth.
Although California is a "code pleading" state, pleadings and the causes of action asserted therein are not empty formalities. (See generally, 4 Witkin Cal. Procedure (5th ed. 2008) Pleadings §§ 1, 33, 419, pp. 65, 97, 556-557.) In fact, pleadings, especially complaints, perform an essential role-they determine what a party must prove at trial in order to be entitled to relief. As our Supreme Court has observed, "The complaint in a civil action serves a variety of purposes [citation], of which two are relevant here: it serves to frame and limit the issues [citation] and to apprise the defendant of the basis upon which the plaintiff is seeking recovery." ( Committee On Children's Television, Inc. v. General Foods Corp . (1983) 35 Cal.3d 197, 211-212, 197 Cal.Rptr. 783, 673 P.2d 660 ; Simmons v. Ware (2013) 213 Cal.App.4th 1035, 1048, 153 Cal.Rptr.3d 178 [" 'The pleadings are supposed to define the issues to be tried' "].)
California courts have long held that "orders sustaining demurrers without leave to amend" effectively "constitute a trial on the merits" and, as such, "must be considered as judgments after trial." ( Smith v. City of Los Angeles (1948) 84 Cal.App.2d 297, 302, 190 P.2d 943.) This is so because it is " 'well settled that a trial need not involve the determination of a fact, but may consist solely or partially in the determination of an issue of law.' " ( Ibid . ) Consequently, sustaining a demurrer without leave to amend effectively dismisses that claim with prejudice and California courts have held that "with prejudice," as that term is used in the context of dismissals, "clearly means the plaintiff's right of action is terminated and may not be revived." ( Roybal v. University Ford (1989) 207 Cal.App.3d 1080, 1086-1087, 255 Cal.Rptr. 469.)[4]
The majority tries to escape from the jurisprudential effect of the dismissal with prejudice of Guan's breach of contract cause of action by adopting a dangerous "anything goes" approach to court orders.[5]
*191 The majority asserts that the trial court purportedly "allowed" Guan to replead his dismissed breach of contract cause of action as a rescission cause of action, which means that the trial court was implicitly "correct[ed] its earlier error-the sustaining of the demurrer to the contractual cause of action in the [SAC]." (Maj. opn. ante , at pp. 178-79, 79.)
There are several highly troubling aspects to the majority's conclusion. First, as discussed supra , it is based on wishful speculation, not fact. Tellingly, the majority does not cite to any written or oral statement by the trial court evincing such a decision or even the intent to make such a decision. In fact, the record before us suggests the exact opposite conclusion from the one reached by the majority. When Guan moved posttrial to conform his pleadings to the proof presented at trial by adding a breach of contract claim, the trial court denied the motion.
Second, the majority's reasoning would invite havoc into the legal system. Under the majority's approach, a trial court, at any time and without any notice whatsoever to the litigants, could reverse itself on an issue of supreme importance to the parties and to the conduct of the litigation. As noted above, the order dismissing Guan's breach of contract claim without leave to replead was not some minor, insignificant order, such as a scheduling order for a status conference. Rather, the order was the legal equivalent of a judgment after a trial on the merits. ( Smith v. City of Los Angeles , supra , 84 Cal.App.2d at p. 302, 190 P.2d 943.)
To allow a court, as the majority does here, to implicitly reverse a judgment without any due process is flatly contrary to our whole system of justice. Under current California law, if a trial court comes to believe that one of its prior interim orders was erroneous, it may, sua sponte, reconsider its decision, provided it "inform[s] the parties of this concern, solicit[s] briefing, and hold[s] a hearing." ( Le Francois v. Goel (2005) 35 Cal.4th 1094, 1108-1109, 29 Cal.Rptr.3d 249, 112 P.3d 636.) Here, the trial court did none of those things.
IV. Conclusion
Any one reading the majority's opinion who has a passing familiarity with both the law and the writings of Lewis Carroll will be reminded of Alice's frustrating encounter with Humpty Dumpty after she fell through the looking glass: " 'I don't know what you mean by "glory," ' " said Alice. Humpty Dumpty smiled contemptuously. "Of course you don't-till I tell you.... 'When I use a word,' " Humpty Dumpty said, in a rather scornful tone, 'it means just what I choose it to mean-neither more nor less.' 'The question is,' said Alice, " 'whether you can make words mean so many different things.' 'The question is,' said Humpty Dumpty, 'which is to be the master-that's all.' " (Carroll, Through the Looking Glass (Palazzo 2015), p. 109.)
Here, the majority, like Humpty Dumpty, has redefined words and the court record as it sees fit in order to reach the result it desires. According to the majority, a rescission cause of action is not really a rescission cause of action, but a breach of contract cause of action. According to the *192 majority, a dismissal with prejudice of Guan's breach of contract cause of action is not really a dismissal with prejudice, and, in any event, that dismissed cause of action may be resurrected by anyone, at any time, and in any manner-a plaintiff can do it by sticking breach of contract allegations into rescission causes of action; the trial court can do it implicitly without a word to anyone until after the trial is over.
This is not how our judicial system is designed to function. As our Supreme Court recognized long ago, even where a court has jurisdiction over a matter, " 'it is still limited in its modes of procedure, and in the extent and character of its judgments. It must act judicially in all things, and cannot then transcend the power conferred by the law.' " ( Baar v. Smith (1927) 201 Cal. 87, 100, 255 P. 827.) If a court " 'transcend[s] the limits of its authority,' " the resulting judgment would be " 'absolutely void.' " ( Ibid . )
Here, the trial court effectively and correctly but not expressly found that Guan had prevailed on his rescission cause of action. Accordingly, the judgment in favor of Guan should be affirmed. However, because the trial court believed that Guan had not prevailed on his rescission cause of action but on some nonexistent breach of contract cause of action, it awarded Guan breach of contract damages and not rescissionary damages. Accordingly, the matter should be remanded to the trial court for a reconsideration of the damages award.
I, therefore, respectfully concur in the majority's determination that judgment for Guan is proper, but I dissent from its conclusion and analysis that Guan's damages properly lie in a breach of contract theory.

All further statutory references are to the Civil Code unless otherwise indicated.

Ironically, Guan never reminded the trial court of its failure of consideration theory when it moved for leave to conform its pleadings to the proof at trial by adding a breach of contract cause of action.

In fact, prior to 1961 and the enactment of section 1692, California law recognized two different actions by which a plaintiff could obtain rescissionary relief- the first an " 'action to enforce a rescission' " and the second an " 'action to obtain a rescission' " (California Law Revision Commission's Recommendations and Study relating to Rescission of Contracts (1960) in 3 Cal.Law Revision Com.Rep. (Sept. 1961) D-5, D-15 (Law Revision Report); see Philpott v. Superior Court (1934) 1 Cal.2d 512, 524, 36 P.2d 635 [discussing pre-1961 law] ; Runyan v. Pacific Air Industries, Inc ., supra , 2 Cal.3d at pp. 311-312, 85 Cal.Rptr. 138, 466 P.2d 682 [same].) The first was an action at law, while the second was an "action in 'equity.' " (Law Revision Report, supra , p. D-5.) The 1961 legislation "abolished the action to obtain court rescission and left only an action to obtain relief based upon a party effected rescission." (Paularena v. Superior Court (1965) 231 Cal.App.2d 906, 913, 42 Cal.Rptr. 366.)

Federal courts take a similar view: "Dismissal 'without leave to amend' means that those claims are no longer part of the active proceedings, it does not mean that Plaintiff can continually attempt to amend his complaint to re-allege the dismissed claims or seek discovery on the dismissed claims." (Bever v. CitiMortgage, Inc . (E.D.Cal. May 15, 2014, No. 1:11-cv-01584-AWI-SKO) 2014 WL 2042015 at *3 ; see Lazo v. U.S . (S.D. Cal. Feb. 9, 1999, Nos. 98CV0119-B (LSP), 99CV0037-B) 1999 WL 250893 at *2 ["by dismissing without leave to amend, the Court means exactly that-without leave to amend, ever"].)

At oral argument on rehearing, Guan's counsel extended this procedural apostasy by arguing that even if a trial court expressly excluded a plaintiff's breach of contract claim from the lawsuit, the plaintiff-on his/her own authority- could nonetheless successfully reinsert that claim into the lawsuit through such relatively informal means as responses to form interrogatories and remarks during opening statement. In other words, Guan's counsel argued that a litigant's desire alone can trump a trial court's written order. Such a position would turn our entire system of justice upside down.