[No. B191471. Second Dist., Div. Five. Sept. 8, 2006.]

In re NINA RINGGOLD on Habeas Corpus.

1002

**COUNSEL**

Nina Ringgold, in pro. per., for Petitioner.

No appearance for Respondent.

Oldman, Cooley, Sallus, Gold, Birnberg & Coleman, Marshal A. Oldman and Mary-Felicia Apanius for Real Party in Interest.

**OPINION**

**TURNER, P. J.—**

## I.   INTRODUCTION

Petitioner, Nina Ringgold, an attorney, seeks a writ of habeas corpus directing the respondent court to annul a June 2, 2006, order adjudging her in direct contempt of court. Ms. Ringgold, the former trustee of a trust, was held

in direct contempt of a June 2, 2006 oral order, issued in open court, to sign a document giving the current trustee access to trust property in a storage facility. The duty to sign the document arose from a prior December 16, 2005 order to cooperate and turn over documents, which would allow trust property to be distributed to beneficiaries. There are two written contempt orders—a June 2, 2006 minute order and a June 6, 2006 contempt order. The two written contempt orders do not mention the prior December 16, 2005 order. Hence, the two June 2 and 6, 2006 written orders fail to meet the jurisdictional requirements of Code of Civil Procedure[1] section 1211, subdivision (a). As a result, the contempt orders are void.

## II. BACKGROUND

Ms. Ringgold is a beneficiary and former trustee of the Aubry Family Trust. She was terminated as trustee by court order on March 10, 2005. Myer J. Sankary, an attorney, is the current trustee. Mary-Felicia Apanius is an attorney who represents a trust beneficiary.

In November 2005, Mr. Sankary filed a supplement to a petition: to determine certain distribution rights; for additional distribution; for instructions; and partial payment of trustee fees. In addition Mr. Sankary requested that Ms. Ringgold be ordered to cooperate with respect to personal property in a storage unit. Mr. Sankary declared: "Ms. Apanius . . . has informed me that her client is entitled to receive the property now held in a Public Storage facility in the name of Nina Ringgold, Trustee of the Aubry Trust. A request has been made for Nina Ringgold to sign over all rights to access the storage facility containing the personal property; this requires that Nina Ringgold meet with me at Public Storage to sign over the rights to the property. I request that the court issue an order compelling Nina Ringgold to cooperate with [me] and to meet with [me] at Public Storage to transfer to me all authority to access the storage room, so that the personal property belonging to [Ms. Apanius's client] and other beneficiaries can be distributed to them as soon as possible."

On November 15, 2005, a preliminary distribution of trust assets order was issued. A further order determining distribution rights was entered on December 16, 2005. The December 16, 2005 order included the following: "Nina Ringgold is ordered within 48 hours to cooperate and forthwith turn[]over to Myer Sankary all documents and keys necessary to transfer possession of the personal property of the decedents Robert Aubry and Mary Aubry Estate now

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise noted.

located in the Public Storage Facility. Myer Sankary is authorized to release the personal property to such beneficiaries of Robert and Mary Aubry as are entitled to said property and in accordance with their agreement." As noted, this December 16, 2005 order served as the basis of the later order to sign a document. Further, the December 16, 2005 order is not mentioned in the contempt orders which will be discussed. On December 19, 2005, Ms. Ringgold filed a notice of appeal from the November 15 and December 16, 2005 orders. (*Ringgold v. Aubry* (B188155, app. pending).)

The trust matter was called for a status conference on May 19, 2006. The following occurred: "Ms. Apanius: Good Morning, Your Honor. [¶] Mary-Felicia Apanius, appearing on behalf of [a trust beneficiary]. [¶] Ms. Raheb: Good morning, Your Honor. Dory Raheb . . . . I'm appearing on behalf of the attorney, Nina Ringgold. [¶] . . . [¶] Ms. Apanius: . . . [T]here is one matter that we would like to raise, and I've discussed this with the trustee. Mr. San[k]ary is unable to appear here today. He's had a medical problem and asked me to ask this, make this request of the court. In December, Miss Ringgold was ordered to turn over keys and sign off on a storage unit that she rented as trustee of the trust. Judge [Richard G.] Kolostian ordered her to make that transfer within 48 hours of his order, and she never cooperated and signed off on that. The trust is incurring expenses of approximately $300 a month to store what we believe is just miscellaneous personal property owned by decedent Robert Aubry. Miss Ringgold accounted for that property and valued it at $1200. [¶] This is turning into a complete waste of money as far as the trust is concerned, and we'd like to discontinue that storage unit and have Miss Ringgold sign off and get that property distributed to whomever it's entitled to. [My client] is the beneficiary of Robert Aubry's will, and she was the person to whom the property was bequeathed. She's now deceased. She was never able to take possession of that property because of Miss Ringgold's lack of cooperation on this. And what we'd like to do is just get the property or the storage unit turned over to the trustee. The trustee would like to inspect it, and then we'd like to offer the beneficiaries an opportunity to select whatever items they would like to have, and then any remaining property sold for the benefit of the trust or given to charity. And I have the document here. Miss Ringgold evidently isn't here to be able to sign off, you know, to transfer the storage unit, but if there's any possibility you could make some sort of order to get her to sign that, that would really be beneficial to the trust. [¶] The Court: Do you know anything about this? [¶] Ms. Raheb: Of course I don't, Your Honor. [¶] [Diana] Williams [(a trust beneficiary)]: I do. I just want to add, because it is, it's

$300 a month they're paying for storage, and it's really stuff that is actually being destroyed because it's been there since 2002. [¶] The Court: Why don't we set an [order to show cause] re contempt for June 2nd. [¶] Ms. Apanius: Okay. [¶] The Court: Counsel, will you give notice? [¶] Ms. Apanius: Yes, I'll give notice. [¶] The Court: Thank you very much. [¶] Ms. Raheb: Thank you so much, Your Honor."

On May 19, 2006, the trial court issued an order to show cause regarding contempt and sanctions stating: "To Nina Ringgold: [¶] Good cause having been shown, you are ordered to appear in this Court . . . on June 2, 2006, 9:00 a.m., to show cause why you should not be held in contempt for violating this Court's order of December 16, 2005, compelling you to cooperate and turn[]over to Myer J. Sankary, Trustee of the Aubry Family Trust, all documents and keys necessary to transfer possession of the personal property of decedents Robert Aubry and Mary Aubry located in a storage unit at Public Storage. The proceedings shall determine whether you may be punished under Code of Civil Procedure § 1218, including petitioners' attorney fees and costs incurred in connection with this contempt hearing."

Ms. Ringgold appeared at the June 2, 2006 contempt hearing. No effort was made to proceed on the order to show cause. Rather, the following transpired: "Ms. Apanius: Well, Your Honor, you ordered the [order to show cause] and that had to do with the storage unit, and that's really the only issue [before the court]. [¶] The Court: Okay. Refresh my recollection. [¶] Ms. Apanius: There is property in storage that's been in storage for some time. Miss Ringgold accounted for it at a value of $1200. What we're trying to do is just get the storage unit turned over to the current trustee so that he can . . . distribute the property and discontinue that expense. [¶] The Court: Okay. . . . Why didn't that happen? [¶] Ms. Apanius: The storage unit will not authorize the turn[]over unless Ms. Ringgold signs a document . . . . We asked her to sign it, and/or the successor trustee has asked her, and she's not done that. [¶] The Court: Miss Ringgold, why can't that happen? [¶] Ms. Ringgold: Your Honor, I'm here procedurally and in a procedurally-affected [order to show cause] that is not based on an affidavit, and since this is—I've been brought to court which under the assumption that I was here on a contempt charge, which doesn't involve an affidavit. I really don't feel comfortable responding to that because I'm being asked to respond, and I object to the procedure of being compelled by fax by counsel serving me with an [order to show cause] that doesn't have an affidavit. [¶] . . . [¶] . . . I've already indicated to this court. I've appeared twice. This matter is a matter subject to the automatic stay. She's presenting documents that I've never seen. If there's some issue about an order that they have a challenge

about that's on appeal, I would prefer that the procedural—that the procedure they use, that they present an affidavit where it can be responded to, because I'm under the assumption here that I'm here on an [order to show cause] for contempt. [¶] The Court: I'll tell you what—[¶] . . . [¶] . . . Sign the document now. [¶] Ms. Ringgold: I don't know what order or document we're talking about, and I'm not going to sign a document that I don't know what it is. [¶] The Court: You have three days' grace before you get put in custody. [¶] Ms. Ringgold: Okay. [¶] The Court: Would you like to go that route? [¶] Ms. Ringgold: I—I would prefer to use procedures established by the Code of Civil Procedure. [¶] The Court: I'm going to find you in contempt, sentence you to five days in jail. You get a three-day stay, pursuant to the code, so that would be the 7th. [¶] Ms. Ringgold: Okay. [¶] The Court: So come up here on the 7th of June ready to surrender for your five days. And you can cure that anytime you want by signing that document. [¶] Ms. Ringgold: I don't know what this document is. Today is for—[¶] The Court: We're through. [¶] Ms. Ringgold: I will cite to you the case of In Re Cowan, in which it was determined the court does not have jurisdiction—[¶] The Court: Ma'am—[¶] Ms. Ringgold: I refuse to sign. [¶] The Court: See you on the 7th. Like I said, you can cure it anytime you want by signing it. [¶] Ms. Ringgold: What would I be curing, Your Honor? [¶] The Court: You're a very bright attorney. You can sign it. [¶] Ms. Ringgold: Okay."

In her habeas corpus petition, Ms. Ringgold declares: "On June 5, 2006 . . . [Ms.] Apanius faxed a copy of the document which was in her hand at the hearing. [Citation.] The document . . . is entitled 'Addendum to Agreement for Moving and Storage Services.' The customer name on the agreement is incorrect because Nina Ringgold (as an individual) does not have an agreement with Public Storage. The contract Ringgold arranged with Public Storage is specifically in the name of the Aubry Family Trust. The information concerning container numbers is all in the possession of trustee Sankary and he is the only person who has keys." A copy of the document in question is attached to the petition. It is dated April 19, 2005.

The June 2, 2006 minute order states: "The Court orders Ms. Nina Ringgold to sign the [document] that would allow counsel Mary-Felicia Apanius to transfer possession of the personal property of decedents Robert Aubry and Mary Aubry located in a storage unit at Public Storage. Ms. Nina Ringgold indicates, in open court, her refusal to review and sign said [document]. [¶] The Court finds Nina Ringgold in direct contempt of the Court's order. Nina Ringgold is sentenced to the County Jail for five (5) days. Execution of sentence is stayed until June 7, 2006. Court states that Nina

Ringgold may cure this contempt by signing said order. [¶] The matter is continued to June 7, 2006 at 9:00 a.m. in this department for execution of sentence."

A written contempt order was issued on June 6, 2006. The written contempt order, which is erroneously entitled, "Order to Show Cause Re Contempt" states: "On June 2, 2006, you appeared in court in the above captioned matter. The matter was called and you announced your appearance. The Court was in regular open session with the judge enrobed and on the bench. [¶] Part of the reason for the hearing on June 2, 2006 was a written order to show cause why you should not be held in contempt for failure to sign documents and transfer keys necessary to transfer possession of personal property of decedents Robert Aubry and Mary Aubry. This order to show cause re contempt and sanctions was signed by the Court on May 19, 2006 and served [on] you by opposing counsel. [¶] In open court, the Court asked you to sign the document and you refused. The Court then, in open court, ordered you to sign the document that was placed in front of you by opposing counsel. You were warned that you would have a three day grace period before going into custody and asked by the Court if that is the route you wished to take. The Court then found you in direct contempt and summar[ily] sentenced you to fi[v]e days in jail. The Court issued an automatic stay of execution of jail sentence until June 7, 2006. [¶] The Court advised you that you could cure the contempt anytime you wanted by signing the document. You again refused to sign the document. The Court finds that you had knowledge of the direct order, that you had the ability to comply with the Court's direct order, that you failed to comply with the Court's direct order and that your refusal to comply was willful and in direct contempt of the Court's order." The May 19, 2006 order to show cause is not attached to the June 6, 2006 order.

Ms. Ringgold appeared in court on June 7, 2005. She was given another opportunity to once again sign the document: "The Court: I'm going to ask the bailiff to serve Ms. Ringgold the papers. Miss Ringgold, are you going to sign the document? [¶] Ms. Ringgold: Your Honor, can I read what I was handed? [¶] The Court: Of course. [¶] Ms. Ringgold: Thank you. Is this a new order[?] I don't understand what this document is, Your Honor. [¶] The Court: This is a recitation of what transpired the other day. The question I have for [you] is, are you going to sign the document or are you going to go to jail? [¶] Ms. Ringgold: Without the assistance of counsel, I don't under-. stand. I would like to have assistance of counsel in reviewing this document, because my understanding is, I appeared here on the 5th of June on an ex parte application requesting that the court serve me with a written order of

contempt so that I could apply for extraordinary relief. I obtained a copy of the written contempt order on the 5th upon my ex parte application. Since that time I filed a writ of habeas corpus in the California Court of Appeal. I'm here, my understanding here is that I'm here to be sentenced on that matter. This document that I'm being handed now, I'm not clear what it is, because it's indicating order to show cause re contempt. If this is a new contempt—[¶] The Court: No, it's not a new—[¶] Ms. Ringgold:—or this is a modified order. [¶] The Court: It is not a new one. [¶] Ms. Ringgold: Is this a modified order from the order I was given on the 5th? [¶] The Court: You're an attorney. I expect you understand the law. [¶] Ms. Ringgold: Well, then I need assistance of counsel, and I would need to have advice of counsel, because I don't understand that. [¶] Ms. Apanius: Your Honor, I would object. [¶] Ms. Ringgold: Since this is a civil proceeding and I'm legitimately saying to you, Your Honor, I can't construe that by getting it first handed to me now. My understanding, the order that I received says that I'm to appear here at 9:00 o'clock to be sentenced. I'm ready to be sentenced and to be taken to the county jail, as the court order indicated on the 5th. [¶] The Court: Okay. I'm going to give you another chance to cure the contempt. Will you sign the document? [¶] Ms. Ringgold: Again, Your Honor, without the assistance of counsel, if I'm construed—I'm only operating under the order that I was given on the 5th. I don't know what this document is. [¶] . . . [¶] The Court: Let me ask you one more time. Are you going to sign the document? [¶] Ms. Ringgold: Your Honor, I am ready to—I am ready to—I'm here for execution of the sentence. Without any further assistance, I would like, I have requested on the record assistance of counsel. My concern is I'm being presented with a document that I still haven't had clarification if this is an amended, attempted amended contempt order or a new order to show cause. I'm not clear. [¶] . . . [¶] The Court: Do you want to sign the document, or not? [¶] . . . [¶] The Court: I'[m] giving you an opportunity, for about the fifth time, to cure the contempt, if you'd like to obey the court's direct order and sign that release document. [¶] Ms. Ringgold: That's not my understanding of the court's order, and I would request assistance of counsel, and I think it's pretty clear. [¶] The Court: You're remanded. I'm sorry."

Ms. Ringgold filed the present verified petition for a writ of supersedeas, habeas corpus, or other appropriate relief on June 7, 2006. On the same date, we issued a temporary stay order of the jail sentence. We issued an order to show cause on June 22, 2006.

### III. DISCUSSION

Ms. Ringgold argues the trial court lacked jurisdiction to make the contempt finding because the December 16, 2005 order was the subject of a pending appeal. We disagree. To begin with, Ms. Ringgold was not found in

contempt of the December 16, 2005 order. Ms. Ringgold was found in contempt of the June 2, 2006 oral order, issued in open court, *to sign the document* giving Mr. Sankary, as trustee, access to the property in the storage facility. More critically, the December 16, 2005 order directing the delivery of personal property was not automatically stayed by the appeal therefrom. Section 917.2 provides, "The perfecting of an appeal shall not stay enforcement of the judgment or order of the trial court if the judgment or order appealed from directs the assignment or delivery of personal property, including documents . . . unless an undertaking . . . is given . . . ." The December 16, 2005 order indisputably directs the delivery of personal property—documents and keys. Ms. Ringgold provided no undertaking—therefore, the December 16, 2005 order was not stayed.

Ms. Ringgold relies on *Baar v. Smith* (1927) 201 Cal. 87, 103 [255 P. 827], for the proposition that section 917.2 is inapplicable if the petitioner is not in possession of the personal property that is the subject of the order. *Baar* was decided in 1927 under former section 943, from which section 917.2 was in part derived. (See Historical Note, 18 West's Ann. Code Civ. Proc. (1980 ed.) foll. § 917.2, p. 479.) Former section 943 then provided in part: "If the judgment or order appealed from direct the assignment or delivery of documents or personal property, the execution of the judgment or order cannot be stayed by appeal, unless the things required to be assigned or delivered be placed in the custody of such officer or receiver as the court may appoint, or unless an undertaking be entered into on the part of the appellant, with at least two sureties, and in such amount as the court, or a judge thereof, may direct, to the effect that the appellant will obey the order of the appellate court upon the appeal." (Stats. 1897, ch. 64, § 1, p. 56; see *Bailey v. Superior Court* (1916) 31 Cal.App. 78, 80 [159 P. 990].) In *Baar,* the petitioner was not in possession of the property she was ordered to deliver. (*Baar v. Smith, supra,* 201 Cal. at p. 103 ["The findings specifically show that [defendant] is not in the present possession of said stock and was not at the time said judgment was rendered; therefore, it would be impossible for her to comply with any order requiring her to deliver such stock to plaintiff; hence, section 943 of the Code of Civil Procedure would be inapplicable. [Citations.]"]; see also *McCallion v. Hibernia etc. Soc.* (1893) 98 Cal. 442, 445 [33 P. 329] [no stay bond required where money was in court's possession]; *Boldemann Chocolate Co. v. Price* (1935) 3 Cal.2d 257, 258–259 [43 P.2d 810] [no undertaking required where insurance policy was in court clerk's custody].) There is no merit to Ms. Ringgold's automatic stay contention.

■ However, the written contempt order failed to comply with the strict requirements of section 1211, subdivision (a) as articulated by the Supreme Court. A direct contempt may be punished summarily, but an order reciting the facts is required. (§ 1211, subd. (a); 7 Witkin, Cal. Procedure (4th ed. 1997) Trial, § 190, p. 217.) Section 1211, subdivision (a) provides in pertinent part: "When a contempt is committed in the immediate view and presence of the court, or of the judge at chambers, it may be punished summarily; for which an order must be made, reciting the facts as occurring in such immediate view and presence, adjudging that the person proceeded against is thereby guilty of a contempt, and that he or she be punished as therein prescribed."

A valid written contempt order consists of three elements. In the case of *In re Buckley* (1973) 10 Cal.3d 237, 247 [110 Cal.Rptr. 121, 514 P.2d 1201], the Supreme Court identified the three elements of a valid contempt order: a recitation of the facts constituting the contempt; the fact the person was adjudged to be in contempt; and a statement of the punishment. (See *Arthur v. Superior Court* (1965) 62 Cal.2d 404, 407 [42 Cal.Rptr. 441, 398 P.2d 777].) This case involves the first element of a contempt order—the recitation of facts requirement. The recitation of facts requirement is jurisdictional. (*In re Littlefield* (1993) 5 Cal.4th 122, 137 [19 Cal.Rptr.2d 248, 851 P.2d 42]; *Chula v. Superior Court* (1962) 57 Cal.2d 199, 203 [18 Cal.Rptr. 507, 368 P.2d 107]; *In re Wells* (1946) 29 Cal.2d 200, 201 [173 P.2d 811].)

Section 1211 was originally adopted in 1872 as part of the codification of California law. (See *People v. Post* (2001) 94 Cal.App.4th 467, 477 [114 Cal.Rptr.2d 356] [explaining 1872 codification of California law]; *Hogoboom v. Superior Court* (1996) 51 Cal.App.4th 653, 660 [59 Cal.Rptr.2d 254] [same].) The first sentence in section 1211 as adopted in 1872, except for minor capitalization and gender reference changes, is repeated verbatim in current section 1211, subdivision (a).[2] The code commissioners' note to former section 1211 states: "Order punishing for contempt must state facts upon which the exercise of the power is founded. People vs. Turner, 1 Cal., p. 152; Ex Parte Field, 1 Cal., p. 187; Ex Parte Rowe, 7 Cal., p. 175. If the order fining and imprisoning for contempt, does not specify on its face wherein the contempt consisted, it will be reversed on certiorari.—Ex Parte Field, 1 Cal., p. 187 . . . ." (See code comrs. note foll. 2 Code Civ. Proc.,

---

[2] Section 1211, as originally adopted, stated in part: "When a contempt is committed in the immediate view and presence of the Court, or Judge at chambers, it may be punished summarily; for which an order must be made, reciting the facts as occurring in such immediate view and presence, adjudging that the person proceeded against is thereby guilty of a contempt, and that he be punished as therein prescribed." (2 Code. Civ. Proc., § 1211 (1st ed. 1872, Haymond & Burch, commrs.-annotators) p. 92.)

§ 1211 (1st ed. 1872, Haymond & Burch, commrs.-annotators) p. 93.) In *The People v. Turner* (1850) 1 Cal. 152, 155, the case referred to in the annotation to the original section 1211, citing both English common law and American authority, the Supreme Court explained: "We think it follows from the distinctions above considered, that the final order of the Court, by which a party is adjudged to have been guilty of a contempt, should always show, upon its face, the facts upon which the exercise of the power is based, and the adjudication made. This is certainly the general, if not the uniform practice. But the order in question does not set forth any facts, nor even show whether the proceeding was for an offence committed in the presence of the Court, or at a distance from it." Thus, from statehood, California courts have been required to recite in writing the facts that serve as the basis of the contempt order.

In the case of *In re Wells*, *supra*, 29 Cal.2d at page 201, the Supreme Court described the, what is now, section 1211, subdivision (a) recitation of facts requirement: "It is the general rule in this state that 'This requirement [that the order recite the facts constituting the contempt] is jurisdictional, and an order which assumes to punish summarily a direct contempt of court is void unless it shows on its face acts sufficient to constitute a legal contempt. The order must contain a statement of facts equivalent to those which the law says must be incorporated in an affidavit for constructive contempt and such facts must prove the contempt. Mere conclusions are not sufficient.' " (*In re Wells*, at pp. 201–202, quoting *In re Battelle* (1929) 207 Cal. 227, 256 [277 P. 725] [direct contempt finding against witness for refusing to answer questions is invalid unless it contains " 'an express recital of facts affirmatively showing not only the precise questions which he has declined to answer[,] . . . but also affirmatively setting forth the facts which show the materiality and pertinency of . . . [the] evidence to the issue before the court . . .' "].) The Supreme Court has noted: " '[A]*n order which assumes to punish summarily a direct contempt of court is void unless it shows on its face facts sufficient to constitute a legal contempt.* [Citations.] Such facts must be stated with sufficient particularity to show, without aid of speculation, that contempt actually occurred. [Citation.]' (*Chula v. Superior Court* (1962) 57 Cal.2d 199, 203 [18 Cal.Rptr. 507, 368 P.2d 107], italics added.)" (*Boysaw v. Superior Court* (2000) 23 Cal.4th 215, 222 [96 Cal.Rptr.2d 531, 999 P.2d 748].) In a similar vein, the Supreme Court has emphasized that the recitation of facts constituting the contempt must be done with "specificity" in the written order. (*Ibid.*; see *In re Littlefield*, *supra*, 5 Cal.4th at p. 129, fn. 6 ["Because we conclude the judgment of contempt must be set aside on the ground the

document embodying the judgment fails to set forth with sufficient specificity the particular acts upon which the trial court based the exercise of its contempt power, we need not and therefore do not address the numerous other arguments made by petitioner . . ."].) Further, the recital of facts requirement is not satisfied by a judge's conclusions as to the acts constituting the contempt nor may the order be sustained by reference to extrinsic documents; albeit, a transcript which places the conduct in context may be attached to the order. (*In re Littlefield, supra,* 5 Cal.4th at pp. 138–139 & fn. 10; *Fine v. Superior Court* (2002) 97 Cal.App.4th 651, 666 [119 Cal.Rptr.2d 376].) The order need not contain empty formalisms such as the misconduct occurred in the presence of the court when the recitation of facts in the order show that is exactly what happened. (*Boysaw v. Superior Court, supra,* 23 Cal.4th at pp. 220–221.)

As will be noted, this case involves the failure of the June 2, 2006 minute order and the June 6, 2006 written contempt order to set forth with the requisite particularity the December 16, 2005 order to provide the documents necessary to transfer possession of the personal property located in the storage unit. It was Ms. Ringgold's refusal to sign the document that would allow that property to be transferred to its rightful owners that was the contemptuous conduct. But the only reason the refusal to sign the document was a violation of a *lawful* oral order was because Ms. Ringgold had already been ordered in writing to turn over documents that would allow the trustee to take possession of the property in the storage unit.

In *Boysaw* and *Littlefield,* our Supreme Court explained what must be in the written contempt order when the contemptuous conduct arises from a prior court order. In *Littlefield,* on June 20, 1991, the Supreme Court described the oral order ultimately violated by Wilbur Littlefield, the Los Angeles County Public Defender: "The court ordered the defense to contact the witness by telephone, obtain her address, and provide it to the prosecution, or, alternatively, to produce the witness in court in order to afford the prosecution an opportunity to interview her prior to trial." (*In re Littlefield, supra,* 5 Cal.4th at p. 127.) Mr. Littlefield refused to obey that oral order. Yet when the written contempt order was prepared, the following mistake occurred: "The written judgment of contempt makes no reference to this June 20 discovery order directing petitioner to obtain and disclose the address of [the witness]. It refers only to the discovery order made on June 17, and states that petitioner refused to comply with that order. The record, however, does not support a finding that petitioner was held in contempt on June 17 or refused to comply with any discovery order made on that date. Rather, as established by the record, the court held petitioner in contempt for refusing to

obey the June 20 discovery order. Accordingly, the judgment of contempt is invalid, because it fails to make any mention of the June 20 order or of petitioner's refusal to obey that order." (*Id.* at p. 139.)

The same mistake occurred in *Boysaw*. A lawyer was ordered not to use an objectionable tone of voice. The Supreme Court explained that the warning (an order) must appear in the written contempt order: " 'The record must show that the judge first *warned* the attorney that his tone of voice and facial expression are offensive. ([*In re Hallinan* [(1969)] 71 Cal.2d] [1179,] 1185 [81 Cal.Rptr. 1, 459 P.2d 255]; *Gallagher v. Municipal Court* [(1948) 31 Cal.2d 784,] 797 [192 P.2d 905].)' (*In re Buckley, supra,* 10 Cal.3d at p. 249, fn. 15, italics added.) Therefore, to support the finding of direct contempt in this case, the order should have recited that petitioner was warned that the tone of voice he was using toward the court was objectionable." (*Boysaw v. Superior Court, supra,* 23 Cal.4th at p. 223, fn. omitted.)

■ Both *Littlefield* and *Boysaw* establish a practical and relatively bright line rule for written contempt orders premised on a violation in the presence of the judge of a previous order: a written direct contempt order which is based on the violation of a prior order must describe the prior order. The reference to the prior order must not be an "empty formalism" nor must the description of the prior order "exalt form over substance." (*Boysaw v. Superior Court, supra,* 23 Cal.4th at p. 220.) As with other aspects of a written contempt order, the reference to the prior order must: recite the facts (what the prior order directed be done); be stated with sufficient particularity that there is no need to refer to any extrinsic document in order to determine what was required by the prior order (with the caveat that a transcript may be attached to the order so as to put the contemptuous conduct in context); be described with sufficient particularity to demonstrate on its face the ensuing contemptuous conduct violated the prior order; and not consist of the judge's conclusions regarding the prior order. (See *Boysaw v. Superior Court, supra,* 23 Cal.4th at p. 220; *In re Littlefield, supra,* 5 Cal.4th at p. 138.) On an even more practical level, the California Supreme Court has only invalidated written contempt orders because they said *too little*. Our Supreme Court has never invalidated a written contempt order because it said *too much*.

The question before us is whether the contempt orders in this case contain sufficient facts to show Ms. Ringgold's conduct was contemptuous. We find they do not. As noted above, the June 2, 2006 minute order states: "The Court orders Ms. Nina Ringgold to sign the [document] that would allow

counsel Mary-Felicia Apanius to transfer possession of the personal property of decedents Robert Aubry and Mary Aubry located in a storage unit at Public Storage. Ms. Nina Ringgold indicates, in open court, her refusal to review and sign said [document]. [¶] The Court finds Nina Ringgold in direct contempt of the Court's order. . . ." The June 6, 2006 written contempt order provides: "On June 2, 2006, you appeared in court in the above captioned matter. The matter was called and you announced your appearance. The Court was in regular open session with the judge enrobed and on the bench. [¶] Part of the reason for the hearing on June 2, 2006 was a written order to show cause why you should not be held in contempt for failure to sign documents and transfer keys necessary to transfer possession of personal property of decedents Robert Aubry and Mary Aubry. This order to show cause re contempt and sanctions was signed by the Court on May 19, 2006 and served [on] you by opposing counsel. [¶] In open court, the Court asked you to sign the document and you refused. The Court then, in open court, ordered you to sign the document that was placed in front of you by opposing counsel. You were warned that you would have a three day grace period before going into custody and asked by the Court if that is the route you wished to take. The Court then found you in direct contempt and summar[ily] sentenced you to fi[v]e days in jail. The Court issued an automatic stay of execution of jail sentence until June 7, 2006. [¶] The Court advised you that you could cure the contempt anytime you wanted by signing the document. You again refused to sign the document. The Court finds that you had knowledge of the direct order, that you had the ability to comply with the Court's direct order, that you failed to comply with the Court's direct order and that your refusal to comply was willful and in direct contempt of the Court's order."

██ The June 2 and 6, 2006 written orders explain that Ms. Ringgold was ordered to sign a document and she refused to do so. The legal effect of the document is described with sufficient particularity. But the contempt orders do not explain with requisite specificity, by reference to the December 16, 2005 order, why she was obligated to sign it. The orders do not recite that on December 16, 2005, Ms. Ringgold was ordered to cooperate and turn over all documents and keys that would allow the trustee to transfer the property in the storage unit to those entitled to possess it. That Ms. Ringgold was ordered to sign a document and she refused to do so are insufficient facts by themselves to satisfy the jurisdictional requirements of section 1211, subdivision (a), as construed by the Supreme Court. The lawfulness of the June 2, 2006 oral order to sign the document was premised on the December 16, 2005 order. As a result, the contempt order is void and must be annulled.

So there is no doubt—had the contempt orders referred with the requisite particularity to the December 16, 2005 order, they would have been valid. In

terms of describing the events that occurred prior to the June 2, 2006 oral contempt finding, we are not suggesting that more than a particularized description of the December 16, 2005 order was necessary. Nothing in any Supreme Court decision suggests that a written contempt order, when discussing a prior order, must describe in irrelevant detail the course of the litigation, controlling legal principles, or the equities of the case. For example, there was no requirement that the written order state that Ms. Ringgold was a lawyer or she had been replaced as the trustee. Nor would there be any duty to describe the property in the storage unit or its value. There was no necessity to go beyond a particularized description of the December 16, 2005 order and set forth the nature of the trust litigation and the like when reciting the pre-June 2, 2006 proceedings.

Two final comments are in order. To begin with, Ms. Ringgold is a lawyer. Business and Professions Code section 6103, which is part of the State Bar Act, states, "A willful disobedience or violation of an order of the court requiring him to do or forbear an act connected with or in the course of his profession, which he ought in good faith to do or forbear . . . constitute causes for disbarment or suspension." (See also *People v. Chong* (1999) 76 Cal.App.4th 232, 243 [90 Cal.Rptr.2d 198]; *Trans-Action Commercial Investors, Ltd. v. Firmaterr, Inc.* (1997) 60 Cal.App.4th 352, 372 [70 Cal.Rptr.2d 449].) Rule 1-100(A) of the Rules of Professional Conduct states, "The prohibition of certain conduct in these rules is not exclusive. Members are also bound by applicable law including the State Bar Act (Bus. & Prof. Code, § 6000 et seq.) . . . ." Canon 3(D)(2) of the California Code of Judicial Ethics states, "Whenever a judge has personal knowledge that a lawyer has violated any provision of the Rules of Professional Conduct, the judge shall take appropriate corrective action." In the event there are future violations of orders, the trial court retains the power to refer Ms. Ringgold to the State Bar of California. If she is again held in contempt for violation of a lawful court order, it is mandatory that she be referred to the State Bar of California. (Bus. & Prof. Code, § 6086.7, subd. (a)(1); *In re Aguilar* (2004) 34 Cal.4th 386, 388 [18 Cal.Rptr.3d 874, 97 P.3d 815].) We leave these issues in the good hands of the trial court.

Finally, nothing in this opinion should be construed as a statement of views that future efforts to compel Ms. Ringgold to execute appropriate documents would be unlawful. All we are holding is that the written orders under review cannot sustain the June 2, 2006 contempt determination. Her conduct on that date can serve as a basis of a contempt order. The order to sign the document allowing access to the storage unit is otherwise lawful. Future efforts can be made to compel her to obey court orders including the use of contempt powers with the application of the incarceration option.

## IV.  DISPOSITION

The petition for writ of habeas corpus is granted. The orders dated June 2, 2006, and June 6, 2006, finding petitioner guilty of contempt, are annulled.

Armstrong, J., and Boland, J.,[*] concurred.

---

[*]Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.