Filed 2/18/15  Genis v. Super. Ct. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| DARRYL WAYNE GENIS,<br><br>    Appellant,<br><br>v.<br><br>SANTA BARBARA SUPERIOR COURT,<br><br>    Respondent. | 2d Civil No. B251732<br>(Super. Ct. Nos. 1417741,<br>1422534, 1423450)<br>(Santa Barbara County) |

" 'As an officer of the court, I will strive to conduct myself at all times with dignity, courtesy, and integrity.' " [1]  (Cal. Rules of Court, rule 9.4 (rule 9.4).)

Appellant Darryl Wayne Genis is a criminal defense attorney.  At the trial court's recess, he instructed the prosecutor, "Try to act a little more professional this afternoon."  He followed his stern admonition by addressing the prosecutor as, "little girl."  It is conduct such as this that undoubtedly moved our Supreme Court to add the statement in rule 9.4 to the oath taken by every newly admitted attorney.  The rule's message, however, is not a new one, though it appears to be lost on

---

[1] The California Supreme Court recently added this statement to the oath taken by every attorney at his or her swearing in as a member of the California State Bar. (See Bus. & Prof. Code, § 6067.)

appellant.  " 'An attorney has an obligation not only to protect his client's interests but also to *respect the legitimate interests of fellow members of the bar*, the judiciary, and the administration of justice.'  [Citations.]"  (*Tenderloin Housing Clinic, Inc. v. Sparks* (1992) 8 Cal.App.4th 299, 306.)

Appellant twice complained to the trial judge that the prosecutor's sighs were distracting him as he argued his cause.[2]  Noting that emotions were running "high," the judge told counsel to "take deep breaths" and return after lunch to finish argument.  During the recess, appellant and the deputy district attorney had an off-the-record exchange.  It was then that the offensive remark was uttered.  The remark was overheard by the judge, who had yet to leave the courtroom.

Following a summary proceeding, the trial judge found appellant in contempt of court.  The appellate division of the superior court denied appellant's petition for writ of certiorari.  He appeals the denial of his petition.[3]  While one might rightly look upon his conduct as boorish and evidencing gender bias, we conclude that a summary proceeding was inappropriate because the conduct at issue did not, under the circumstances, constitute a direct contempt.  In fact, the conduct did not fall within any of the relevant statutory grounds for contempt.  Accordingly, we reverse and annul the contempt order.

FACTS AND PROCEDURAL HISTORY

Appellant represented the defendants in two misdemeanor cases.  At a hearing on motions in both cases, he became increasingly frustrated with prosecuting attorney Hannah Lucy.  Twice during his argument to the trial court, appellant stopped to complain about Lucy sighing while he was speaking.  The second time, the court stopped him.  Stating that "[t]here is no reason for emotions like that in a motion hearing like this," the court "order[ed] counsel over the lunch

---

[2] The trial court did not hear the prosecutor's alleged sighs.  We have listened to the audio recording of the proceeding and cannot discern any audible sighing.

[3] We have jurisdiction pursuant to Code of Civil Procedure section 904.1, subdivision (a)(1), and *Bermudez v. Municipal Court* (1992) 1 Cal.4th 855.

hour to take deep breaths and come back and deliver the rest of their argument in a professional and a restrained and a logical manner." The court then recessed the proceeding.

Before the judge left the courtroom, appellant and Lucy had an off-the-record exchange in which he told her, "Try to act a little more professional this afternoon." She "smirked" at him. He then called her a "little girl." Another prosecutor called the incident to the judge's attention. The judge acknowledged that appellant "called Ms. Lucy a name, a disparaging name," and stated that she would address the issue after the lunch break.

When the court resumed after lunch, the judge explained that she had heard appellant call Lucy a "little girl" and that the remark "appears to be disorderly, contemptuous or insolent behavior toward me, as well as opposing counsel, while holding court and a breach of the peace tending to interrupt the due course of this judicial proceeding, as well as a violation of [his] duty as an attorney, for example, the duty to maintain the respect due to the Court." The court ordered appellant to show cause why he should not be held in contempt and gave him "the opportunity to explain, provide an excuse, if there is any, or give an apology."

Appellant apologized to Lucy and the court and admitted that his comment "clearly was wrong." He explained that it was "precipitated" by Lucy's "sighing loudly in my right ear, breaking my train of thought, hemming and hawing and behaving in [an unprofessional] manner." He claimed that this had happened before. He expressed his opinion that Lucy "knows that if she agitates me enough, that she can get me to be provoked so that I will respond in the way I did." He said he "fell into the trap."

The court found that appellant's apology was "disingenuous" because he inappropriately "put the blame back on Ms. Lucy," whose behavior did not warrant his response. In addition, the court thought that the term "little girl" was "gender biased." The court found appellant in contempt beyond a reasonable doubt and fined him $1,000.

3

DISCUSSION

On appeal from the denial of a petition for writ of certiorari as to a judgment of direct contempt, the sole question we consider is whether there is substantial evidence in the record as a whole to sustain the trial court's jurisdiction. (*McCann v. Municipal Court* (1990) 221 Cal.App.3d 527, 536.) We construe the evidence, findings, and judgment strictly in favor of the contemnor. (See *Koshak v. Malek* (2011) 200 Cal.App.4th 1540, 1549) "[T]he proper interpretation of a statute or rule of court relied upon by the trial court as its authority to award sanctions is a question of law, which we review de novo. [Citations.]" (*Vidrio v. Hernandez* (2009) 172 Cal.App.4th 1443, 1452; see *In re Willon* (1996) 47 Cal.App.4th 1080, 1089 [where underlying facts are undisputed, court's finding that they were sufficient to constitute contempt "presents a mixed question of law and fact which is subject to independent appellate review"].)

"When a contempt is committed in the immediate view and presence of the court, or of the judge at chambers, it may be punished summarily . . . ." (Code Civ. Proc., § 1211, subd. (a).)[4] In such a situation, known as direct contempt, the trial court must issue an order reciting the facts, adjudging the person guilty, and prescribing the punishment. (*Boysaw v. Superior Court* (2000) 23 Cal.4th 215, 219-220.) The court must state the facts with sufficient particularity to demonstrate without speculation that the conduct constituted a legal contempt. (*In re Ringgold* (2006) 142 Cal.App.4th 1001, 1012.) An indirect contempt " 'require[s] a more elaborate procedure to notify the person charged and to afford an opportunity to be heard. [Citations.]' " (*In re Koehler* (2010) 181 Cal.App.4th 1153, 1159; see §§ 1211-1217.)

Appellant claims that this was an indirect contempt case and cites a number of procedural protections that he did not receive, such as the right to counsel and the right to call witnesses. (See, e.g., *Application of Shelley* (1961)

---

[4] All statutory references are to the Code of Civil Procedure unless stated otherwise.

4

197 Cal.App.2d 199, 202 ["Due process in [indirect] contempt cases includes a reasonable opportunity to the accused to prepare and present his defense . . ., and the right to be represented by counsel"].)  Respondent does not dispute that he lacked these procedural protections.  Rather, respondent argues that the contempt was direct and that no such protections were required.

In general, direct contempt is " 'contempt for acts occurring in the courtroom *and interfering with the orderly conduct of business*.' "  (*Wanke, Indus., Commercial, Residential, Inc. v. Superior Court* (2012) 209 Cal.App.4th 1151, 1164, fn. 16, italics added; see *In re Bell* (Tex. Spec. Ct. Rev. 1995) 894 S.W.2d 119, 129 [holding that person who upbraided judge in courthouse for being late "was not in direct contempt because his acts were neither in the presence of the court, nor did they impede the administration of justice"].)  At common law, a court could exercise its contempt power "to preserve order, decency and silence, without which no Court could vindicate or support the laws entrusted to its administration," but only "while engaged in the performance of its lawful functions . . . ."  (*People ex rel. Field v. Turner* (1850) 1 Cal. 152, 153.)  The original contempt statute, which codified the common law doctrine, thus permitted summary contempt proceedings only for "such contempts as are committed in the presence of the Court *during its session*."  (*Id.* at p. 155, italics added.)

"[T]he distinction [between direct and indirect contempt] finds its reason, not any more in the ability of the judge to see and hear what happens in the open court than in the danger that, unless such an open threat to the orderly procedure of the court and such a flagrant defiance of the person and presence of the judge before the public in the "very hallowed place of justice," as Blackstone has it, is not instantly suppressed and punished, demoralization of the court's authority will follow. . . .  [¶]  When the contempt is not in open court, however, there is no such right or reason in dispensing with the necessity of charges and the opportunity of the accused to present his defense by witnesses and argument."  (*Cooke v. United States* (1925) 267 U.S. 517, 536.)

The trial court misunderstood the statutory language "in the immediate view and presence of the court" to mean in front of the trial judge's person—*le tribunal, c'est moi*. To the contrary, the trial judge's presence at the contempt is neither necessary nor sufficient to justify summary contempt proceedings. The trial judge need not be present for the contempt to be direct so long as it is " 'committed in the presence of any one of the constituent parts of the court . . . .' " (*Lapique v. Superior Court of Los Angeles County* (1924) 68 Cal.App. 407, 413.) Conversely, even if the trial judge *is* present in the courtroom, the contempt is not direct if the court is not in session. (*Id.* at p. 415.) The trial judge "is a constituent part of the organization, but he is not the court. . . . The court is the totality of the constituent parts. It consists of the entire judicial organization for the trial of causes, and it is immediately present whenever and wherever, *from the opening to the adjournment of the sitting*, these constituent parts are actually performing their appropriate functions. [Fn. omitted.]" (Mosk, *Direct Contempt* (1956) 31 J. State Bar of Cal. 510, 514, italics added.)

The current statutory language suggests as much.[5] It allows for summary proceedings when the contempt is committed in the immediate view and presence of either "the court" or "the judge at chambers." (§ 1211, subd. (a).) If we were to treat "judge" and "court" interchangeably in this context, then any contemptuous act committed in front of the judge would be a direct contempt and the statutory reference to "the judge at chambers" would be superfluous. Wherever possible, we avoid constructions that render particular statutory provisions

---

[5] Section 1211 has remained unaltered since its enactment in 1872 except for minor, stylistic changes. Its language was taken from the Practice Act of 1851, which in turn appropriated nearly verbatim section 1469 of New York's Field Code of 1850: "When a contempt is committed in the immediate view and presence of the court or officer, it may be punished summarily, for which an order must be made reciting the facts as occurring in such immediate view, and presence, adjudging that the person proceeded against, is thereby guilty of a contempt, and that . . . he be punished as therein prescribed. . . ."

superfluous or unnecessary. (*City of Alhambra v. County of Los Angeles* (2012) 55 Cal.4th 707, 724.)

The phrase "judge at chambers" was most likely added to allow for the fact that judges conduct certain formal proceedings in chambers rather than in the courtroom. (See Judiciary Act of 1851, § 33 ["The District Judges shall, at all reasonable times, when not engaged in holding Court, transact such business at their Chambers as may be done out of Court"]; see also, e.g., *Clarke v. Ray* (1856) 6 Cal. 600, 604-605 [noting that insolvency statute authorized judges to hear creditors' objections either in open court or "at chambers"].) We need not speculate further given that the conduct at issue here occurred in the courtroom. Court was not in session. There is no transcription or recording of the conversation between appellant and the prosecutor. The trial court did not hear what was said before appellant called the prosecutor a "little girl." Consequently, appellant should have been afforded the full panoply of rights attendant with indirect contempt proceedings. (*In re Oliver* (1948) 333 U.S. 257, 275 [due process does not permit summary adjudication of contempt except for a "narrow exception" involving "charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent "demoralization of the court's authority . . . before the public" "]; see Black's Law Dict. (9th ed. 2009) p. 1199, col. 2 [defining "open court" as "[a] court that is in session, presided over by a judge, attended by the parties and their attorneys, and engaged in judicial business," usually involving "a proceeding in which formal entries are made on the record"].)

In reaching a contrary conclusion, the appellate division relied on *Lister v. Superior Court* (1979) 98 Cal.App.3d 64, 70, which concluded that the term "process" or "proceedings" in section 1209, subdivisions (a)(4), (a)(5), and

7

(a)(9),[6] "is used in its technical legal sense and refers to something done or to be done in a court of justice or before a judicial officer." The present case, however, does not involve these subdivisions. More importantly, *Lister* was not concerned with an act performed before a judicial officer while the court was not in session. It involved a prospective juror who had responded to a court questionnaire with "impertinent or flippant" answers written in crayon. (*Lister v. Superior Court*, *supra*, at p. 67.) In holding that the prospective juror was *not* guilty of contempt, the *Lister* court stressed that the word "proceeding" "refers to something done or to be done *in* a court of justice or *before* a judicial officer." (*Id.* at p. 70, italics added.) This passage cannot be construed more broadly to mean that an act committed anywhere in front of a judge is subject to punishment for contempt.

The problems with the contempt adjudication run deeper than the inadequate procedure employed by the trial court. Appellant's statement to the prosecutor did not constitute contempt.[7] We agree with appellant that, from a legal standpoint, there is no such thing as contempt of prosecutor—only contempt of court. (See 7 Cal.Jur.3d (2011) Attorneys at Law, § 4 ["In practice, an attorney is an officer of the court only in the sense that, in addition to the attorney's duty of fidelity to the client, the attorney also owes the duty of good faith and honorable dealing to the judicial tribunals before whom the attorney practices"]; cf. *Cammer v. United States* (1956) 350 U.S. 399, 400, 405 [concluding that federal contempt statute punishing " '[m]isbehavior of any of [a court's] officers in their official

---

[6] *Lister* involved former subdivision (a)(8), which was renumbered as subdivision (a)(9) in 2011.

[7] We are not confronted with the more difficult question of whether appellant's conduct could constitute contempt as "[d]isobedience of any lawful . . . order . . . of the court." (§ 1209, subd. (a)(5).) His disregard of the trial court's instruction to "take deep breaths"—i.e., calm down—during the recess arguably violated this provision. But the trial court did not cite it as a reason for the contempt finding. In fact, the court expressly disclaimed any reliance on appellant's failure to heed its admonition as a basis for contempt, noting that the admonition was "not directly relevant to [the contempt] proceeding."

transactions' " did not apply to attorneys—though they often are deemed
" ' "officers" of the court' "—because "a lawyer is engaged in a private profession, important though it be to our system of justice"].)

Section 1209 specifies several acts that constitute contempt. The trial court found that appellant committed three of these: "[d]isorderly, contemptuous, or insolent behavior toward the judge while holding the court, tending to interrupt the due course of a trial or other judicial proceeding" (*id.*, subd. (a)(1)), a "breach of the peace . . . tending to interrupt the due course of a trial or other judicial proceeding" (*id.* subd. (a)(2)), and "[m]isbehavior in office, or other willful neglect or violation of duty by an attorney . . . appointed or elected to perform a judicial or ministerial service" (*id.* subd. (a)(3)).

Section 1209, subdivision (a)(1) does not apply because appellant's comment was to the prosecutor rather than "toward the judge" and was not made while the judge was "holding the court." Subdivision (a)(2) does not apply because the court was in recess—appellant's private comment to the prosecutor could not have "interrupt[ed] the due course of a trial or other judicial proceeding."

Section 1209, subdivision (a)(3) also does not apply. The trial court focused on appellant's "willful . . . violation of duty." If this were the sole element of subdivision (a)(3), then we would agree with the trial court that appellant violated his duty of civility to opposing counsel. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 412 ["[U]nwarranted personal attacks on the character or motives of the opposing party, counsel, or witnesses are inappropriate and may constitute misconduct"]; Super. Ct. Santa Barbara County, Local Rules, appen. 5(C)(2) ["Lawyers should treat judges, counsel, parties, witnesses, and court personnel in a civil and courteous manner, not only in court but in depositions, conferences, and all other written and oral communications"].) But subdivision (a)(3) applies only to attorneys (and others) "appointed or elected to perform a judicial or ministerial service." It thus requires more than a showing that the attorney violated his duty *as*

9

*an attorney*. The attorney must have "willfully neglected [or violated] a *judicial or ministerial* duty." (*Gates v. Municipal Court* (1992) 9 Cal.App.4th 45, 57, italics added.)

The purpose of section 1209, subdivision (a)(3) is to give the court "a means of protection against . . . attacks upon its character . . . ." (*In re Shay* (1911) 160 Cal. 399, 406.) An attorney's out-of-court statement that neither influences the judge nor affects the proceedings is not categorically immune, but it must at least "tend to degrade the court in the minds of the people." (*Ibid.*) Appellant's private statement to the prosecutor, while inappropriate and insulting to her personally, was not an affront to the court as an institution.

Respondent's reliance on *People v. Whitus* (2012) 209 Cal.App.4th Supp. 1, is misplaced. The quoted language, pointing out that professionalism and civility "is demanded of lawyers, at *all times* and at *all stages* of a case" (*id.* at p. 13), pertained to the appropriate *sanction* for the attorney's behavior before the appellate division. Ultimately, the *Whitus* court referred the attorney (appellant) to the State Bar for potential discipline. There was no contempt finding at issue. Respondent's other authority, *In re Buckley* (1973) 10 Cal.3d 237, 254, and *Hawk v. Superior Court* (1974) 42 Cal.App.3d 108, 123, are distinguishable in that they involved statements made in open court.

As we noted at the beginning, rule 9.4 of the California Rules of Court now requires attorneys taking their professional oath to swear that they will conduct themselves " 'at all times with dignity, courtesy, and integrity.' " Though this statement is required to be averred only by new attorneys, appellant would be well advised to reflect upon it in his practice of law.

## DISPOSITION

The judgment is reversed and the trial court's order of contempt is annulled. The clerk of this court is directed to send a copy of this opinion to the California State Bar for consideration of disciplinary action against appellant.

We express no opinion on what discipline, if any, is to be imposed.

NOT TO BE PUBLISHED.


                                          PERREN, J.


We concur:



GILBERT, P. J.



YEGAN, J.

11

Jean M. Dandona, Judge

Superior Court County of Santa Barbara

_____

Michael Jon Fremont for Appellant.

Sedgwick LLP and Douglas J. Collodel for Respondent.